## BOOZER v. TEAGUE.

1. It being shown that the legal title to land was once in a party, it is incumbent on those who assert that such title has passed out of him, to prove it.

2. A deed absolute in terms cannot be shown by parol to have been upon condition that the grantee should pay two notes of the grantor outstanding against the land.

3. An absolute deed in the usual form, contained a general warranty qualified by the additional words—"except as regards the two notes given for the purchase money." *Held*, that these additional words did not raise any ambiguity, but in the light of the fact that this grantor had left unpaid two notes, secured by mortgage, given by her when she had purchased from a former owner, were intended only to except this encumbrance from her warranty.

4. There was no evidence in this case to show any accident or mistake in the terms of the deed.

5. Where the answer denies that plaintiffs hold the legal title, they are not in a position to urge the specific performance of a contract to convey ; and such defences are wholly inconsistent.

6. The evidence here of a contract to convey land was too loose and shadowy to sustain a claim for specific performance ; and, as it rested wholly in parol, is obnoxious to the statute of frauds—the payment of the purchase money and the retention of a possession, which was not taken in pursuance of the contract, not being such part performance as would take a case out of that statute.

7. The court cannot decree specific performance of a contract for the sale of land contained in a letter, unless the letter contains all the mate-

rial terms of the contract. It is not sufficient, if it requires parol evidence to supplement it.

8. A grantor who erects improvements on the land of her grantee, and pays obligations resting on this land, created by her while in her possession, but which her grantee agreed to pay, cannot rely upon those matters to raise a contract for reconveyance.

9. An executor brought action for the sale of his testatrix's lands in aid of assets, alleging that testatrix died seized and possessed of a tract of 295 acres and also of a tract of 60 acres. An infant defendant put in a formal answer by guardian *ad litem,* submitting his rights to the protection of the court. The master reported that testatrix died *in the possession* of these two tracts, and recommended a sale of a part of the larger tract, and this report was confirmed. *Held,* that testatrix's *seizin* of the 60 acre tract was not *res judicata* as to this infant.

10. The minority of one co-tenant protects the interests of his adult co-tenant from the operation of the statute of limitations.

11. A party defendant to an action for the recovery of land in which she has an interest, although she has not answered, may testify to the fact that she had received a letter from the person, now deceased, under whom the plaintiffs claim, but may not testify as to the contents of such letter.

12. Declarations of a former owner, now deceased, of the land in suit, may be proved—not in support of his title, but in reply to testimony that he had never claimed the land.

13. And such evidence in reply being received, the Circuit Judge committed no error in refusing to permit defendants to reply thereto—especially where (the case being heard by the judge without a jury) the evidence so excluded was presented in the form of affidavits on a motion for new trial, and then fully considered.

14. The findings of fact by the Circuit Judge were sustained by the evidence.

15. Where a party pays money for another in whom was previously the legal title, there is no resulting trust.

Before KERSHAW, J., Newberry, February, 1886.

The Circuit decree in this case was as follows:

This action was submitted to be heard and determined by the judge without a jury, at the February term of the court, upon the testimony and arguments of counsel. The facts, as I find them, are as follows: On the 9th day of November, 1871, Elizabeth C. Teague, at the request of John D. Boozer, her son by a former marriage, agreed to purchase a tract of land for him from one E. T. Whitman, for the sum of $960, to pay one-third

of the purchase money in cash, and give her notes, secured by a mortgage of the land, for the balance, each for one-half thereof, payable one at one year and the other at two years from that date; the cash payment to be made a gift to her said son, and he to meet the payment of the notes aforesaid when they became due. In pursuance of said agreement, the purchase was made, the cash paid, the land duly conveyed to the said Elizabeth C. Teague, the notes made and delivered, and a mortgage duly executed and delivered to the said E. T. Whitman, to secure the payment of the notes aforesaid. On the same day, and at the same time, a deed of the same land was duly made and delivered by the said Elizabeth C. to the said John D. Boozer, conveying the same to him in fee, for the consideration expressed in the deed of $960, in the usual form, except that after the usual clause of warranty the following words were added, "except as to the notes given for the purchase money." These deeds and mortgages were duly recorded.

At the time when these transactions occurred John D. Boozer lived with his mother on the home place. He exercised ownership over the land, and bargained with his mother for a small piece of her land adjoining the Whitman place, with the purpose of building a residence thereon, and procured and had delivered there a portion of the lumber and other material for the construction of the proposed buildings. In 1872, soon after these transactions, the said John D. Boozer got into some trouble with the authorities then controlling the State, and left the State for some time. During this time his mother advanced for him a considerable sum of money—from seven to nine hundred dollars. After his return he told his mother he would give up the land to her, on account of the expense and trouble he had been to her. She then paid up her two notes for the purchase money of the land and had the mortgage satisfied. John D. Boozer resided three years after his return with his mother, and exercised no ownership over the land, but it was occupied from the time he left the State, in 1872, to the time of his marriage, by tenants of his mother, who received the rents and paid the taxes thereof, and also cleared land and erected buildings thereon.

In the latter part of the year 1876 John D. Boozer conversed

with G. A. Langford, the eldest brother of the plaintiff, their father being dead, with reference to his proposed marriage with her, and represented to him that he owned the Whitman land, spoke of building on that land, and asked Langford to help haul lumber to put up the buildings. He married on January 31, 1877, and died within three months thereafter, leaving his widow, the plaintiff, surviving, who was then pregnant with her child, the defendant, John D. Boozer, who was born in due course of gestation thereafter, and is now in his ninth year. During his brief married life, the said John D. Boozer exercised acts of ownership over the Whitman land, and erected thereon a crib, residing with his wife's mother, and passing frequently to and from the Whitman place. The said Elizabeth C. Teague died in March, 1876, leaving a will, of which the defendant, Charles C. Teague, her husband, was appointed executor, leaving her estate to her children and the children of her said husband by a former marriage, who are defendants hereto, and John D. Boozer, deceased.

The defendants, except John D. Boozer, have been in possession of the said land ever since the death of the said John D. Boozer, the average rentals whereof are worth about one hundred and ten dollars per annum. This action is brought by the said Jane E. Boozer to recover the possession of the said land for herself and her son, John D. Boozer, the defendant. No demand was made by the plaintiff for the possession of the land until the commencement of this action, May 15, 1885, she having been in ignorance of the existence of the deed from E. C. Teague to the said John D. Boozer, deceased, until a recent period.

CONCLUSIONS OF LAW.—1. That the plaintiff and the defendant, John D. Boozer, are entitled to the possession of the land described in the complaint, as heirs at law of John D. Boozer, deceased. 2. That they are entitled to recover from the defendants, other than John D. Boozer, one hundred dollars, damages for the detention of the said land, since the commencement of this action.

My reasons for the above findings and conclusions are as follows: It will not be denied that John D. Boozer became seized in fee of the land in question by the execution and delivery of the deed of Elizabeth C. Teague conveying the same to him. It

is not claimed that he ever conveyed away that estate. It follows that he died seized, and that the land descended to the heirs at law—the plaintiff and her infant son, John D. Boozer. It also follows that they are entitled to the possession of the land, unless it has been shown by other claimants that they have an equitable title to the same. That could only be in case they have shown that there was a resulting trust to the said Elizabeth C. Teague, attending the purchase of said land by her, or that there was such a contract of sale of the same between her and John D. Boozer, accompanied by delivery of possession under the contract, as would entitle her devisees to a decree for the conveyance of the land in a proper case for that purpose.

Here are none of the elements of a resulting trust. It only remains to inquire whether there was such a contract for the sale or conveyance of the land as will defeat the legal title of the plaintiff and her son. All the evidence tending to show such a contract was objected to by the attorney for the plaintiff, and was taken and reserved to be considered by the court if found admissible, or rejected, if found to be irrelevant or inadmissible. All the testimony not derived from communications between the deceased, John D. Boozer, and any party in interest testifying thereto, tending to show the circumstances under which the deeds were executed, under which John D. Boozer obtained title to the land, I have considered as admissible; such as consisted of declarations of John D. Boozer made to parties in interest, who were examined as witnesses thereof, I have considered as inadmissible, and have, therefore, rejected it. There was in the deed from Mrs. Teague to John D. a warranty, the terms of which were peculiar and required explanation. Extrinsic evidence was admitted, not to vary or contradict the deed, but to explain what was ambiguous in it. *Whar. Evid.*, § 956.

I have also considered all the testimony tending to show that John D. Boozer agreed to give up the land to his mother, on account of the trouble he had caused her, and the money she had advanced and paid for him in 1872, except such as were sought to be proved by parties in interest, consisting of communications between such parties and the said John D. Boozer. I include in the rejected evidence the testimony of Mrs. Mills, in relation to

the contents of a letter said to have been written to her by John
D. Boozer. It was a communication to her, and proposed to be
proven by her testimony, by parol upon some proof of the pos-
session of the letter. I considered this rejected evidence inad-
missible under the code, section 400. I would have rejected all
testimony of the parties as to the communications between John
D. Boozer and Mrs. E. C. Teague for the same reason, if I did not
consider myself concluded by what is said in the case of *Hughey*
v. *Eichelberger*, 11 S. C., 49. I would have said that the legis-
lature meant to have excluded the testimony of parties under
such circumstances as to declarations made by one party,
deceased, to another party, deceased, where there was no other
living witness, or, at least, that such was the policy of the law.
But, as I have said, I consider the point settled by the decision
referred to.

Excluding the testimony thus rejected, there is not sufficient evi-
dence of such a contract as would entitle the defendants to the pos-
session of the land as against the holders of the legal title. The
fact is, that the answers of the defendants do not set up any such
contract. They rely upon a parol agreement to show that John
D. Boozer gave up the land to Mrs. Teague, and asks that the
deed from her to him be cancelled, upon the idea that the legal
estate remained in Mrs. Teague after such agreement. The legal
estate could not be revested by any such agreement. *Fripp* v.
*Fripp*, Rice Ch., 85. The parol evidence of such agreement
was only admissible under the pleadings as tending to support the
denial of the answers, that the defendants wrongfully withheld
the possession of the land from the plaintiffs. If the parol agree-
ment was of such a character as to entitle the defendants to such
a decree for a conveyance, it could be availed of to defeat the
action to recover the possession. *Pom. Rem.*, § 94; *Chase* v.
*Peck*, 21 *N. Y.*, 581. It is there said, "The defendant may defeat
the action upon equitable principles; and if upon the applica-
tions of these principles the plaintiff ought not to be put in pos-
session of the land, he ought not to recover."

The only evidence of a contract in terms is that of the defen-
dant, Charles C. Teague, to a conversation between Mrs. Teague
and John D. Boozer, held after his return from exile. His testi-

mony was as follows: "Immediately after John D. Boozer came back she said to him, 'You know the distress you were in, and the trouble I was brought to, are you going to stand to your contract? I think you ought to give up the land to me.' He said he would." The same witness testified, after having been recalled, that she paid for the land after the conversation. He said to other witnesses that he had been "to a great deal of expense and trouble to his mother, and he expected never to have anything more to do with the land; that was the night after his return from the west, he said he never intended ever to have any more to do with it." He told his mother in the presence of Mrs. Mills, the defendant, "that she had advanced money for him that he needed, and he did not care to take the place."

There was no change of position between the parties after these conversations or declarations, except that Mrs. Teague paid her notes given for the land and had the mortgage satisfied. She was bound for these notes to the Whitmans, and there is nothing to show that she paid them in consideration of the alleged return of the land, or more properly, the promises of John D. Boozer to give it up. The land was bound for the payment of the notes. If she had so preferred, she might have allowed the land to be sold to pay debts and bought it in, and so have perfected her title to it. John D. Boozer had undertaken, with her, to pay the notes himself, and she had taken care, in her deed to him, to make the land stand as a security that he would do so; but when she came to pay the debt, she chose to destroy the only security she had to enforce the simple promise that he would pay the debt. He was her son by a former marriage; her property had been derived, in part at least, from his father. She had married again and had other children. Is it not possible, or probable even, that she did not care to take back the land farther than to occupy and use it as she did, leaving the title where it was? Where is the clear and satisfactory evidence that she did not intend to do just what she did? Who is to say that this was not just what she meant and understood between her and her deceased son?

This consists with his conduct with regard to the land after his mother's death. It was also consistent with his representa-

tions made to Langford, when speaking to him in reference to his marriage proposal for his sister, when he said he owned the land, and spoke of building, &c. It appears that he did not interfere with his mother's possession while she lived, but took charge of the land after that. It also appears that she took no steps to procure a title from him. The conversation testified to by Charles C. Teague, as having been had between him and his mother, while it indicates that something had passed which she spoke of as a contract, does not with certainty show what it was. The language of Mrs. Teague as represented, "Are you going to stand to your contract? I think you ought to give up the land to me," does not convey the idea that there had been a binding contract in regard to that before, but only that something had been said by him which induced her to think that he ought to give up the land to her. He admitted this moral obligation by responding that "he would." He did accordingly give up the land to her and she enjoyed it for the remainder of her life. Putting her possession with that of the devisees, the present defendants, they held the land long enough to repay the amount for the land out of the rental value. If he had made a deed of the land to his mother, without words of inheritance, it would only have conveyed a life estate; upon what principle, then, can we give greater effect to a verbal agreement, to term it most favorably to the defendants, to give up a tract of land to another?

On the whole, I cannot find sufficient evidence to overcome a legal title, and the consequent right of possession, established by the plaintiff. I am better satisfied with this result, when I consider that the defendants have so long enjoyed the possession of the land, as to satisfy whatever equity they might be supposed to have by reason of the payment by Mrs. Teague of that portion of the purchase money that had been assumed by John D. Boozer. As the possession of the defendants was acquiesced in for so long a time by the plaintiff, even though it resulted from ignorance of her rights (which ignorance might have been removed by searching the registry of deeds), I have not found damages for the retention of the land except from the commencement of this action, no demand having been made for possession before that time. As for the improvements claimed to have been

made on the land by the defendants and Mrs. Teague, they could not have been made in ignorance of the legal title, and nothing can be adjudged in regard to them under the circumstances of this case.

It is therefore adjudged, that the plaintiff, Jane E. Boozer, and the defendant, John D. Boozer, do recover of the defendants, Charles C. Teague, David S. Teague, Abram M. Teague, Frances E. Mills, Charles A. Teague, Lola A. Teague, Lucy E. Teague, and James J. Teague, the possession of the real property described in the complaint, and also the sum of one hundred dollars damages for withholding thereof, and          dollars costs of this action.

Defendants made a motion for a new·trial, upon which his honor passed the following order :

A motion upon notice was made in this case for a new trial. At this special term it was on the docket, but could not be heard for want of time.    For the convenience of parties, and as understood without objection, it was deferred to be heard after the adjournment of the term, on written argument.    Objection is made to the hearing now on the written argument submitted, for the want of jurisdiction.    I consider that the court's jurisdiction is retained under the circumstances.    I have with some care considered the arguments submitted and can see no good reason for granting a new trial.    If the evidence in regard to the building of the crib on the land were rejected, and the contents of the letter said to have been written by John D. Boozer to his sister were admitted, I would still be of the opinion that there was no sufficient proof of a contract to reconvey the land to Mrs. Teague by John D. Boozer, to deprive the plaintiff and her son of their legal rights in the premises.    The alleged contract was not sufficient under the statute of frauds.    The terms of it are uncertain in that it does not indicate what estate Mrs. Teague was to have under it.    There was no change of possession after it was made.    The proof is not clear that the consideration of the money advanced by Mrs. Teague for Jno. D. Boozer was the alleged agreement.    Nor that she did not intend to do just what she did, to wit, occupy the land while she lived and leave the title in her son, John D. Boozer.    Nor that it was not entirely

satisfactory to her that he should have the land after her death, or when she was satisfied. As to a refusal of a right to reply: the defendants had no such right. The court *ex gratia* in peculiar cases, and in furtherance of manifest justice, may permit such reply, but it is in no sense a matter of right. I do not consider the additional evidence such as entitles the defendants to a new trial. Authorities: "Acts as part performance, to elude the statute, must be done in strict pursuance of a specified and certain agreement." *Church of Advent* v. *Farrow*, 7 *Rich. Eq.*, 378. Mere retention of pre-existing possession will not take a case out of the statute of frauds ; change of possession is necessary. *Poag* v. *Sandifer*, 5 *Rich. Eq.*, 170. The word "heir" is necessary to create an estate of inheritance if created by deed. 4 *Kent*, 5. "The example at law was followed by the Courts of Equity, and the same legal construction applied by them to a conveyance to uses." *Id.*, 6. The legal action has altered this rule as to devises, but not as to deeds. *A. A.*, 1824.

The strongest statement of the contract (so-called) is made by C. C. Teague, who testified that he read the letter to his sister, said to have been written. He says: "He said he was in great trouble, and must have assistance, and if she could assist him in any way, he was willing to relinquish his interest in the Whitman place to procure the money he desired." How much money was not stated. If the writing had been produced and was otherwise sufficient under the statute of frauds, it could not have been enforced in that form. Nothing can be supplied by parol, &c. *Hyde* v. *Cooper*, 13 *Rich. Eq.*, 257. The contract might have been waived by Mrs. Teague, and failure to demand a conveyance from Jno. D. Boozer while she lived, taken in connection with other circumstances in the case, lead me to the conclusion that she did not intend to require him to relinquish to her his interest in the land.

It is ordered and adjudged, that the motion for a new trial be refused.

The defendants appealed upon the following exceptions :

Because his honor erred :·

I. As to testimony : 1. In excluding the testimony of Mrs. Fanny Mills, offered to prove the reception and contents of a let-

ter from John D. Boozer to her, which was lost.   2. In exclud-
ing the testimony of C. C. Teague, David S. Teague, A. M.
Teague, Mrs. Fanny Mills, and others, offered to prove the con-
duct and declarations and admissions of John D. Boozer in refer-
ence to the land in question.   3. In allowing testimony for the
plaintiff against the objection of the defendants and to their sur-
prise, to show that John D. Boozer had charge of the land after
his mother's death and built a crib upon it, which was shown on
motion for new trial, by disinterested witnesses, to be a mistake.
4. In refusing to allow the defendants to reply thereto, to show
that such testimony was a mistake.

II. As to the facts: 1. In holding that John D. Boozer ever
exercised ownership over the land.   2. In holding that after the
death of his mother he resumed the control of the land and exer-
cised ownership over it.   3. In holding that the declarations of
conduct of John D. Boozer, admitted, did not show that he en-
tirely abandoned the land to his mother and disclaimed all right
thereto, for a sufficient consideration.

III. As to the law: 1. In not holding that the title to the
land, as to the defendant, John D. Boozer, was *res adjudicata*,
and it had been adjudged to be the property of Elizabeth C.
Teague, and in not holding that as to the plaintiff this action was
barred by the statute of limitations.   2. In holding that the
defendants did not show such equitable title to the land as to bar
its recovery in this action.   3. In holding that the rents and
profits of the land to the commencement of this action were suffi-
cient to have repaid the money Elizabeth C. Teague advanced to
John D. Boozer, and the amount she paid in satisfaction of the
notes for the land.   4. In not considering the expenses incurred
by the defendants in improvements upon the land as essential in
determining their rights.   5. In refusing to hold that the deed
from Elizabeth C. Teague to John D. Boozer should be can-
celled.   6. In failing to hold that the title to the land should be
reconveyed to the estate of Elizabeth C. Teague.   7. In failing
to hold that the land should be held responsible, under the deed
and mortgage, for the money paid therefor by Elizabeth C.
Teague.   8. In failing to hold that the land should be held respon-
sible for the money advanced to John D. Boozer by his mother.

9. In refusing to hold that, under the terms of the deed and the contract in regard to the purchase of the land, it reverted to Elizabeth C. Teague upon the refusal of John D. Boozer to pay the notes therefor and her payment thereof. 10. In not granting the motion for new trial, both upon the questions of law and fact upon which it was grounded.

*Messrs. Moorman & Simkins,* for appellants.

*Messrs. Goggans & Herbert,* contra.

October 10, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This was an action brought by the plaintiff to recover a certain tract of land, known as the Whitman place, for the benefit of herself and her infant son, John D. Boozer, jr., who, because of his minority, has been made a defendant. Her claim is based upon the allegation that her deceased husband, John D. Boozer, sr., died seized and possessed of the land, and she, as his widow, and their infant son, John D., being his only heirs at law are entitled to recover possession of the said land from the other defendants, who, it is alleged, wrongfully withold the possession from them. The claim of the defendants (except John D. Boozer, jr., who, though nominally a defendant, is practically one of the plaintiffs, and will be so treated throughout this discussion), on the other hand, is that the land in controversy really belonged, equitably, if not legally, to Elizabeth C. Teague, and that they, as her devisees, are entitled to retain possession thereof. The case was by consent heard by Judge Kershaw without a jury, who rendered judgment in favor of the plaintiff, refusing a motion for a new trial submitted by the defendants, and from such judgment, as well as the order refusing the motion for a new trial, all of the defendants except Mrs. Frances E. Mills and John D. Boozer, jr., appeal, upon numerous grounds set out in the record.

The decree of the Circuit Judge states so fully and clearly the facts of the case, and so satisfactorily vindicates the correctness of his conclusions, that but for the earnestness with which this appeal has been urged, it would scarcely be necessary to add anything to what he has so well said.

There cannot be a doubt, after reading the voluminous testimony set out in the "Case" (though even this is denied in the answers of the defendants), that on November 9, 1871, Mrs. Elizabeth C. Teague made an absolute deed to her son by a former marriage, John D. Boozer, sr., for the tract of land in controversy, which had been conveyed to her by one Whitman on the same day. So far as we can learn, the deed was in the usual form, with a general warranty, qualified by these words : "except as regards to the two notes given for the purchase money." The title having thus been vested in John D. Boozer, sr., must necessarily now be in his heirs at law, unless it has passed out of him in some way. The fundamental inquiry, therefore, in the case is, did this title ever pass out of John D. Boozer, sr., in his lifetime ? for there is no pretence that his heirs at law have, since his death, been divested of the title, except, perhaps, by the statute of limitations, of which we will speak hereafter.

To maintain the defence set up the burden is upon the defendants to show that the title did, during the life-time of John D. Boozer, sr., pass back to his mother, Mrs. Elizabeth C. Teague, under whom defendants claim. This they claim has been done in several ways. First, they contend that the deed from Mrs. Teague to her son Boozer was made upon condition that he was to pay the two notes given by Mrs. Teague to Whitman for the credit portion of the purchase money, and that by reason of the breach of such condition and the re-entry by Mrs. Teague the title revested in her. But there is no such condition inserted in the deed, and it is quite certain that parol evidence is wholly insufficient to establish such a condition, for that would be a very material addition to the deed, essentially varying its legal effect. *Mowry* v. *Stogner*, 3 *S. C.*, 251; *Hammond* v. *Railroad Company*, 15 *Id.*, 10.

It seems to us that the Circuit Judge went as far as he well could have done, in favor of the defendants, perhaps too far, in receiving parol evidence to explain what is termed the ambiguity arising from the words above quoted, which were inserted in the clause of warranty. It does not seem to us that those words raised any ambiguity at all. The evidence clearly shows that Mrs. Teague bought the land from Whitman for her son, paying

the one-third of the purchase money in cash, *as a gift* to him, and giving her two notes for the credit portion which it was understood were to be paid by her son. Now, inasmuch as she had given a mortgage on the land to Whitman to secure the payment of these two notes, it was quite natural and proper when she conveyed the land to her son, to insert in the warranty an exception so far as the two notes were concerned, so that if Whitman should find it necessary to foreclose his mortgage and sell the land, the son would have no recourse upon his mother for breach of the warranty in the deed to him, which, without the words inserted, he undoubtedly would have under a general warranty, unqualified by such an exception. It seems to us that the words inserted plainly meant this, and nothing more—that Mrs. Teague warranted the title to her son against all persons except the mortgagee, who might enforce payment of the notes out of the land. Be this as it may, however, it is quite certain that neither the evidence adduced nor any other parol evidence would have been sufficient to incorporate in the deed such a condition as that claimed by defendants.

Again, it is urged that the failure to insert such a condition in the deed was the result of accident or mistake, and that a Court of Equity will grant relief against such an omission by reforming the deed. Without going into the legal aspects of such a contention, it is quite sufficient to say that there is no evidence whatever upon which to raise the question. The testimony of the scrivener, who drew the deed, shows that it was drawn in accordance with the wishes and instructions of the parties, and the very fact that the words above quoted were inserted in the clause of warranty is evidence that the matter of making provision for the payment of the notes was not overlooked at the time. Indeed, there is a total lack of any evidence whatever to show that anything was omitted from the deed which the parties intended or desired should be inserted. The most that can be said of it is that the old lady expected her son to pay the two notes, but that she took no steps to bind him legally to do so. All that she did do, and all that the evidence shows she desired to do, was to protect herself against any claim for breach of warranty in case the mortgagee should find it necessary to sell the land, which she

conveyed absolutely to her son, under the mortgage which she had given to secure the payment of the credit portion of the purchase money.

Again, it is urged that there was a contract between John D. Boozer, sr., and Mrs. Teague, whereby he agreed to surrender the land to her in consideration of the payment by her of certain money for him, and that by reason of the performance on her part of the terms of such contract, he was bound to perform his part. This claim rests upon the doctrine of specific performance of a contract, and the first difficulty which the defendants have to encounter is that no such claim is set up in their answers. On the contrary, such a claim, resting as it does upon the assumption that the legal title was in John D. Boozer, is wholly inconsistent with the defences there set up. But, waiving this, it seems to us very clear that the defendants have wholly failed to make such a case as would entitle them, or their testatrix, to claim the specific performance of a contract for a reconveyance of the land. It is quite clear that the contract, if there was one, rested altogether in parol, and hence it is incumbent upon the defendants to show such a part performance as would take the case out of the operation of the statute of frauds.

We agree with the Circuit Judge that the evidence that there was any contract on the part of the said John D. Boozer, sr., to *reconvey* the land to his mother, if not altogether wanting, is of a very loose and shadowy character. The most that can be said is that Boozer, impressed with a feeling of gratitude for the kindness of his mother, in furnishing the money necessary to relieve him from serious trouble into which he had fallen, expressed a willingness to surrender the land to his mother. But there is a singular absence of any testimony tending to show that either the mother or the son ever supposed or understood that the land was to be reconveyed to her in consideration of the money which she had paid out to relieve him from his troubles. The inference to be drawn from the testimony is that the mother paid out this money, under the promptings of maternal feelings, to relieve her son from distress and not with any view or expectation of a contract for the reconveyance of the land, and that the son, upon his return from exile, prompted by a feeling of

gratitude, and not as a matter of contract, declared his willingness to surrender the land to his mother, which he seems to have done. But it nowhere appears that this was a matter of contract, whereby he had bound himself to reconvey the land to his mother; and, accordingly, we find no evidence that any steps were taken, or even any wish expressed, to carry out such supposed contract by a reconveyance of the land.

But, even assuming that there was a verbal contract to reconvey the land, the question still remains whether there was such part performance as would relieve it from the operation of the statute of frauds. The mere payment of the purchase money would not be sufficient, even assuming that it was paid, although the evidence is far from clear as to the amount paid. Nor will the fact that Mrs. Teague was in possession be sufficient, for she did not take possession under and in pursuance of the alleged contract. *Poag* v. *Sandifer*, 5 *Rich. Eq.*, 170; *Mims* v. *Chandler*, 21 *S. C.*, 480.

It is urged, however, that the letter of John D. Boozer, sr., to Mrs. Frances E. Mills, his sister, the contents of which were testified to by C. C. Teague, was a sufficient compliance with the statute of frauds. The testimony of that witness as to this point was as follows: "He said that he was in great trouble and that he had to have assistance from some source or other, and if after speaking to his mother, through Fannie Mills, if she could assist him in any way, he was willing to relinquish all interest in the Whitman place to procure the money that he desired." Now, it is apparent that, if the letter itself containing this language had been introduced in evidence, instead of the verbal testimony of a witness as to its contents, it would not establish such an agreement as that its specific performance would be enforced by a Court of Equity. The rule being that the writing relied upon must contain all the material terms of the agreement, and that it cannot be supplemented by parol evidence (*Hyde* v. *Cooper*, 13 *Rich. Eq.*, 257), this letter would be plainly insufficient. No amount being stated, it would be difficult for a court looking only to that letter to frame a decree for specific performance.

The fact that improvements were made on the Whitman place by Mrs. Teague during her life-time, and continued by defend-

ants since her death, cannot avail anything; for if there was no contract to reconvey, as we have seen, then such improvements were made with full knowledge that the legal title was in Boozer. Indeed, the evidence would seem to show that these improvements were commenced before there was any pretence that there had been any agreement to surrender the land, and consequently could not, with any propriety, be said to have been in pursuance of such alleged agreement.

The fact that Mrs. Teague paid the notes for the purchase money of the land after the conversation between herself and her son when he returned, cannot affect the question, for the witnesses who undertake to prove an agreement for the surrender of the land do not state as the consideration for such agreement the payment of these notes, but, on the contrary, state as such consideration the payment of the money which Mrs. Teague had advanced to relieve her son from the difficulties in which he had become entangled. She was legally liable to Whitman for the payment of these notes in any event, and if she saw fit to pay them and have the mortgage extinguished, instead of taking the proper steps to secure herself, such payment cannot be imported into the previous agreement, if there had been one, as part consideration therefor.

Again it is contended that the question of title as to the infant defendant, John D. Boozer, jr., has been already adjudged against him; and this being so, the plaintiff having lost the protection which she might otherwise claim under the disability of her infant son, is barred by the statute of limitations from maintaining this action. To sustain this defence of *res adjudicata*, the record of a proceeding instituted in the Court of Common Pleas by Charles C. Teague, as executor, soon after the death of Mrs. Teague, to which the infant defendant, John D. Boozer, jr., was a party, is relied upon. The object of that proceeding was to obtain an order for the sale of a portion of the real estate of Mrs. Teague in aid of the personalty for the payment of her debts. The complaint exhibited the will of Mrs. Teague whereby she disposed of "all her real estate" without further description or specification. Although it did not appear from the will that Mrs. Teague assumed to be the owner of the land in controversy,

and did not undertake to dispose of it by her will specifically, yet it was alleged in the complaint that she died seized and possessed of a tract of land containing 295 acres, "also of an additional tract of 60 acres, known as the Whitman place." The minor, John D. Boozer, jr., appeared by guardian *ad litem* and put in a formal answer, submitting his rights to the protection of the court. The case was referred to the master, who, amongst other things, reported "that Elizabeth C. Teague died in the possession of the whole of the 295 acres of land, of which her former husband, John D. Boozer, died seized and possessed, and also 60 acres, more or less, of land, known as the Whitman place." This report was confirmed, and the court ordered that 100 of the 295 acres be sold to pay the debts and costs of the proceedings. After this no further proceedings were had in the case.

How this can be regarded as an adjudication of the title to the Whitman place, it is very difficult, if not impossible, to conceive. No such issue was necessarily raised, and none such was decided, or necessary to be decided, under the proceedings which were had in the case. True, the executor alleged that Mrs. Teague died seized and possessed of the Whitman place, and in the answer of the infant there is no denial, *in terms*, of that allegation, nor was there any necessity for such a denial on the part of the infant defendant. His formal answer, committing his rights to the protection of the court, was sufficient to raise any issue necessary for the protection or preservation of his rights; and if it had been deemed necessary to determine the question of title to the Whitman place, as it was not, then the formal answer would have been sufficient to raise that question. It cannot, therefore, with any propriety, be said that the infant defendant, by not denying in terms the allegation in the complaint, that *Mrs. Teague* died *seized* and possessed of the Whitman place, has thereby admitted such allegation. It will also be observed that the master in his report did not find that Mrs. Teague died *seized* and possessed of the Whitman place, but only that she died "*in the possession*" of that place. Indeed, the very fact that 100 acres of the 295 acre tract, about which there does not seem ever to have been any dispute, was recommended to be sold, instead of

the separate tract of 60 acres, the *legal* title to which was certainly not in Mrs. Teague, would seem to indicate a purpose not to decide anything in reference to the title to that tract ; and this may be the reason why the master, although it was alleged in the complaint that Mrs. Teague died *seized* and possessed of the Whitman place, simply found that she died *"in the possession"* of that land, which finding was precisely in accordance with the facts as developed by the testimony in the present controversy.    It is quite clear, therefore, that the plea of *res adjudicata* as to the infant, John D. Boozer, jr., cannot be sustained.

This being so, it is equally clear that the plea of the statute of limitations as to the plaintiff cannot be sustained, as she is protected by the minority of her co-tenant, John D. Boozer, jr. See *Hill* v. *Sanders* (4 *Rich.*, 521), where it was held that the rule was well settled in this State, that the minority of one cotenant will protect the interests of his adult co-tenant from the operation of the statute of limitations ; and that the rule extends to tenants in common as well as to joint-tenants, and applies whether the infant co-tenant is joined in the action to try the title or not.

Our next general inquiry is, whether the Circuit Judge erred in his rulings as to the admissibility of evidence.    It seems to us that the rulings of the Circuit Judge were strictly in accordance with the provisions of the code, and we do not see how this could be made more plain than it is made by the statements of Judge Kershaw in his decree.    It is, however, earnestly contended that there was error in excluding the testimony of Mrs. Mills as to the contents of the letter received by her from John D. Boozer, sr. It will be observed that this witness, though a party to the record and directly interested in the result of the action, notwithstanding the fact that she put in no answer, was permitted to testify as to the loss of the letter, but was not permitted to testify as to its contents, for that would, in the face of the code, have been allowing her to testify as to a communication made to her by a party then deceased, under whom the plaintiff claimed as heir at law.    This ruling was precisely in accordance with the decision of this court in the case of *Standridge* v. *Powell*, 11 *S. C.*, 549.

Again it is urged that the Circuit Judge erred in permitting respondent to prove declarations of John D. Boozer, under whom she claimed, as to his claim to the land after his mother's death. It will be observed that these declarations were not offered in support of John D. Boozer's *title* to the land, but simply to rebut the testimony offered by defendants, that he had never set up any claim to the land after his return from exile, as well as to explain his acts in taking possession of the land; and for these purposes the testimony was competent.

The complaint made by the appellants, that the judge erred in refusing them the privilege of replying to the testimony offered by the plaintiff in reply, cannot be sustained. In the first place it does not appear from the "Case," as prepared for argument here, that any objection was made to the plaintiff's testimony as not being in reply, or that any application was made to the court for the privilege of replying thereto. But as no objection upon this ground has been interposed by respondent's counsel, who, on the contrary, has impliedly, at least, admitted that the proper foundation was laid for this ground, we will assume that the objection was made, and the privilege asked for, at the proper time. Still we think there was no error in the course pursued at the trial. The defendants' case rested largely upon the alleged fact that John D. Boozer, sr., after his return never set up any claim to the land, and never resumed the possession thereof, and the testimony now in question was manifestly in reply to the evidence adduced by the defendants to sustain that position, and was, therefore, properly received as a reply to the defendants' evidence. This being so, it is clear that the defendants were not entitled, as matter of right, to the privilege of replying to the reply, though the judge might possibly, as matter of discretion, have allowed them that privilege. But in addition to this, the testimony which defendants claim they were improperly debarred the privilege of introducing, seems to have been presented to the Circuit Judge, in the form of full and voluminous affidavits, upon the motion for a new trial, and it is quite certain that if he had supposed that the exclusion of such testimony worked any wrong to the defendants, he would have granted a new trial. On the contrary, he says, after a careful consideration of the case, "I do

not consider the additional evidence such as entitles the defendants to a new trial."

As to those grounds of appeal which impute error to the Circuit Judge in his findings of fact, it is quite sufficient to say that we see no reason, under the well settled rule of this court, to interfere.     The evidence was conflicting as to some of the most material positions, and it is quite clear that there is enough in the testimony to support the conclusions of fact reached by the Circuit Judge.

We have not deemed it necessary to say anything as to the claim that there was a resulting trust in favor of Mrs. Teague, for the reason that under the case of *Ex parte Trenholm* (19 *S. C.*, 126), it is too plain for argument that such a claim cannot be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.