13642

WELCH *ET AL.* v. EDISTO REALTY CO. *ET AL.*

(169 S. E., 667)

Mr. *H. L. Erckmann,* for appellants,

*Messrs. George E. Grimball* and *J. Waites Waring,* for respondent.

May 30, 1933.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Aubrey L. Welch sold to Edisto Realty Company a tract of land on James Island in the County of Charleston, and in close proximity to the City of Charleston, the purchase price of which was secured, in part, by bonds now held by Aubrey L. Welch, and a mortgage of the premises to Mrs. Wilhelmina K. Welch, as trustee. The Edisto Realty Company had bought the property for the purpose of development and sale. It conceived the plan of interesting the City Council of Charleston in building a municipal golf course on a part of the land so purchased, which plan it suggested to the Welches. Their negotiation thereabout resulted in a written instrument, whereby it was agreed, in consideration of the benefits which each party would derive from the construction of the golf course, that: "Should the City of Charleston agree to establish a municipal golf course on the property hereinabove referred to, and should the party of the first part, for this purpose, convey to the City of Charleston, or its nominee, a tract of the said property consisting of from one hundred to one hundred and twenty acres of said property, then, as part of such conveyance, the said Wilhelmina K. Welch will release from the lien of the said mortgage such property so conveyed, without payment of any consideration, other than the consideration hereinabove set forth, for such release."

The contract further provided that if the Edisto Realty Company shall subdivide further portions of the remainder of the mortgaged property the price of releases shall be $200.00 per lot. The price was then $100.00 for releases.

This contract was executed the 18th day of February, 1928. The City of Charleston agreed to construct, and did construct, the municipal golf course, and on the 26th day of July, 1929, Edisto Realty Company executed and delivered to the City Council of Charleston its deed whereby it conveyed, in fee simple, subject to the covenants set forth, approximately 112 acres of the said property, its boundaries being shown on a plat which showed the tract to contain 114 acres. The deed contained a provision that if the City Council of Charleston, its successors or assignees, should fail to maintain the property so conveyed, for use as a municipal golf course, the said property shall revert to Edisto Realty Company upon certain conditions. The deed and plat were duly recorded. The golf course was completed about July 8, 1929, and the deed to the City Council of Charleston followed on July 26, 1929. When the City Council demanded of Welch that he release the land from the lien of the mortgage, he refused to do so, on the ground that the golf course had not been constructed on the land which he had contracted with Edisto Realty Company it should be constructed on; therefore he was under no obligation to make the release.

The action, which is for the foreclosure of the mortgage of Edisto Realty Company to Wilhelmina K. Welch, as trustee, was commenced November 17, 1931; and the City Council of Charleston was made a party defendant. The complaint is in the usual form of foreclosure and asks the sale of the mortgaged property, which includes all of that conveyed by Edisto Realty Company to City Council of Charleston, which is the corporate name of the municipality. The Edisto Realty Company did not answer the complaint. The City Council of Charleston answered, setting up the

contract between Edisto Realty Company, and the Welches, under which it was induced to construct the golf course; the completion of the golf course, the demand for release of the lien of the mortgage by Mrs. Welch, and the refusal to do so; the conveyance of the property upon which the golf course was constructed by it from A. L. Welch to Edisto Realty Company; that the City Council spent large sums of money in carrying out its contract to construct the golf course and club house and other buildings; that plaintiffs saw this work continuously in progress and they are now estopped to assert the alleged lien of their mortgage on the property conveyed to this defendant. To this answer plaintiffs replied, setting up that the instrument of writing between the plaintiffs and Edisto Realty Company does not affect City Council of Charleston because:

(1) Said instrument is without consideration and merely between plaintiffs and Edisto Realty Company; (2) that said instrument is void for uncertainty, there being no particular piece of property accurately described in or affected by it; (3) that said instrument is void as to the property described in the deed to the City Council of Charleston because it was distinctly understood and agreed that it should at the most cover only such part of the property of the Edisto Realty Company as lay to the east of the King's Highway, or Cut Bridge Road, and said deed covers property on the west side of said road; (4) that the deed to the City Council of Charleston was taken without any release from plaintiff's mortgage, or any agreement to release, and City Council is not an innocent party, but acted negligently in the premises

It was referred to the master, F. K. Myers, to hear and determine all of the issues of law and of fact. He filed his report the 29th day of July, 1932, in which he held that the property lying to the west of the King's Highway, also known as Cut Bridge Road, so conveyed to the City Council of Charleston, was still covered by plaintiffs' mortgage and that plaintiffs were not estopped to assert the lien of their

mortgage thereon, and recommended a sale of all the property covered by plaintiffs' mortgage; that the land lying east of the Cut Bridge Road to be sold first; if the proceeds from that sale did not pay the mortgage debt, the land lying west of the road to be sold. Exceptions to this report by the City Council of Charleston were argued before Judge G. B. Greene, then presiding in the Ninth Circuit. He filed a decree, dated November 14, 1932, by which he sustained the exceptions to the master's report, and by which he adjudged that all of the property contained in the deed to the city was free of the lien of plaintiffs' mortgage, and he directed that plaintiffs execute a formal release of said property within thirty days after the final determination of the case.

From this decree plaintiffs appeal upon 28 exceptions. In his brief appellants' attorney submits the questions to be determined under six heads. We shall condense them and consider them under three heads, but all the issues made will be considered.

The Court is satisfied with the decree of Judge Greene, and might well adopt it as the judgment of this Court. But the earnest and able argument of appellants' counsel merits careful and serious consideration.

We think the cardinal questions made by the appeal are these:

Is the agreement between plaintiffs and Edisto Realty Company, which we shall call the realty company, void for uncertainty?

Is it ambiguous and was it error to hold that parol evidence was not competent to explain it?

Are plaintiffs estopped to enforce the lien of their mortgage against the land conveyed by the realty company to City Council of Charleston, which we shall designate as the City Council, which land lies west of the King's Highway, also known as the Cut Bridge Road, but which we prefer to call the highway?

Is the agreement between plaintiffs and the realty company void for indefiniteness?

This question is admirably discussed by the Supreme Court of Georgia in its opinion in the case of *Baker v. Lilienthal,* filed March 18, 1933, and reported in 169 S. E., 28, 31, under date of May 18, 1933. Action was brought upon a written contract for the sale and purchase of land. The defendants demurred on the grounds that the writing attached to the petition is vague and uncertain, does not identify the subject-matter of the alleged sale, and does not describe with definiteness and certainty the loan on the property to be conveyed by plaintiff to defendant. The demurrer was sustained and the petition dismissed. The petitioner excepted. The Supreme Court reversed the trial Court. The opinion states: "When the contract expressly states the amount of purchase money *or furnishes a key by which it can be ascertained, then the contract is sufficient.*" Citing *Muller v. Cooper,* 165 Ga., 439, 441, 141 S. E., 300. We have added the italics to the quotation.

Further from the same opinion: "The contract agreed to and executed by the parties contained the following, which constitutes the subject-matter with which the parties were dealing: 'The undersigned agrees to purchase through J. H. Ewing & Sons Realty & Loan Co., agent, the following described property, to wit' (giving the description quoted in the foregoing statement of facts). The contract was signed by 'L. B. Lilienthal, purchaser,' and by the vendor, as follows: 'The above proposition is hereby accepted, this 25th day of November, 1931, Mrs. Bessie H. Baker, seller.' If this constituted the entire contract, it would be complete and binding upon the parties, under the authority cited above. Indeed, we do not mean to suggest that the contrary of this proposition is asserted by the defendant. But the above does not constitute the entire contract; and it remains to be decided whether additional portions of the contract will have the effect of rendering nugatory the portion above quoted.

Immediately following and connecting with the portion quoted above are the following words : 'to be paid as follows : Subject to loan of The Fidelity Mutual Life Insurance Co., reducible $1,000.00 annually, bearing interest at 6% payable semi-annually $37,000.00. Free of all other loans.' We think it is obvious that this provision does not cause the contract to become unenforceable for any reason urged. The contract is certain (1) as to the parties, (2) the gross consideration, and (3) the description of the property which was subject to the sale. It names a definite sum as consideration. * * * It further provides how that sum is to be paid; *and the criticism is of that provision of the contract.* The intention of the parties may be shown and the manner of payment made certain by resort to parol evidence. *However, that portion of the contract with respect to the loan of the Fidelity Mutual Insurance Company is not vague or indefinite. The intention of the parties is plain.*" (Italics added.)

In the contract we are considering the intention of the parties is perfectly plain, to wit : If the realty company succeed in inducing the City Council to construct a municipal golf course on the mortgaged property, the realty company agrees to convey to the City Council a part of such property not to exceed 120 acres, and the mortgagee agrees to release such conveyed property from the lien of the mortgage. There is no vagueness nor uncertainty here. The question of indefiniteness in contracts is considered in the case of *Stroman v. South Carolina Power Co. et al.,* 168 S. C., page 538, 167 S. E., 844, 845.

The Springfield Light & Power Company conveyed to W. D. Black certain real estate which included a mill pond, buildings, and machinery. The deed contained this provision : "The grantee agrees to sell the said mill pond and adjacent real estate, herein and hereby conveyed, including buildings thereon and machinery contained in said buildings to C. B. and G. E. Stroman within a reasonable time when and if the same is discontinued or ceases to be used for the

purpose of generating electric current, the price to be Four Thousand ($4,000.00) Dollars." Black conveyed the property to Edisto Public Service Company; the deed contained the above-quoted clause. By arrangement between the defendant corporations the property is now owned by South Carolina Power Company. The Stromans brought their complaint for damages for breach of the contract to reconvey. Among other defenses, the defendants contended that "the clauses in the deed under which recovery is sought is nothing more than an option, unenforceable and void under the law for indefiniteness."

The case went to the jury which found for plaintiffs, and defendants on appeal relied, *inter alia,* on the position just above quoted, Mr. Justice Stabler, delivering the opinion of this Court said: "Their position is that no time was fixed for the exercise of the 'option,' if one existed and hence there was never any contract between the parties. We are not in accord with this view; we think that the time for the performance of the agreement was fixed with reasonable certainty in the clause in question. The grantees, appellants here, agreed to sell the property purchased by them to the Stromans when they ceased to use it for generating electricity; a contingency the happening of which could be readily ascertained."

The exceptions which present this question are without merit.

Involved with this ground of appeal is the contention that this agreement is without consideration. This ground likewise lacks merit. Aside from the question whether plaintiffs profited by increase of value of other real estate, there is evidence that they received a substantial sum, under the terms of the contract, from the increased prices of releases on lots sold. In connection with this ground of appeal the contention is made that the agreement is between the realty company and these defendants, and the City Council has no interest in it. It is patent on

the face of the paper that if and when the City Council agreed to construct the municipal golf course on the mortgaged premises it became vitally interested in the contract.

This exception is overruled.

It is urged by several exceptions that the agreement is void as to the property described in the deed from the realty company to the City Council for the reason that there was an understanding and agreement, in parol, between plaintiffs and the realty company that the golf course should be constructed on lands covered by the mortgage lying on the east side of the highway, and should not cover any of the mortgaged lands lying west of the said highway. In connection with the exceptions presenting this issue, there are exceptions which urge that it was error for the Circuit Judge to hold the agreement was not ambiguous and to hold that it was error for the master to admit parol evidence to explain it.

We agree with the Circuit Judge that there is no ambiguity, latent or patent, in the agreement. Plaintiffs contend that there was an agreement in the negotiations leading to the written contract that the golf course should not be, even in part, on the lands west of the highway. It is elementary law that all parol agreements leading to the written contract are merged in the writing. The omission of any such antecedent agreement does not create an ambiguity. If plaintiffs desired that the parol agreement, for which they now contend, be incorporated in the written instrument, they should have taken legal steps to reform that paper.

However, although Judge Greene held that it was error to admit the parol evidence, nevertheless, he considered it, and arrived at the conclusion that the evidence did not sustain plaintiffs' plea of an independent parol agreement. There is evidence *pro* and contra this issue, and we are not disposed to think there was error in the finding of the Circuit Judge. But if it be admitted that there

was error in that particular, it did plaintiffs no harm for the reason that the conclusion of the Circuit Judge that the plaintiffs have estopped themselves to claim that the lien of their mortgage still covers the land west of the highway is correct.

If it were conceded that there was an agreement that the golf course should not be constructed, or any part of it, on lands west of the highway, it is apparent from the testimony of A. L. Welch himself that he waived it. He testified that when he protested to Jenkins that they were building the golf course in part on the west side of the highway, Mr. Jenkins said what do you care if you are paid for it, or words to that effect. Thereupon Mr. Welch made no further protest and took no steps to stop the building on the west side of the road. He says he did this because he expected to be paid for the land. Here was a clear waiver of the parol agreement in favor of payment for the land. Waiver is the voluntary relinquishment of a known legal right. Whether plaintiffs may proceed against the realty company, or/and the City Council for the value of the land on the west side of the highway used for the golf course, we do not now decide, but it is clear to our mind that plaintiffs have by this action in this particular waived the right to subject the land so taken to the lien of their mortgage.

We are equally clear that they have estopped themselves to assert the lien of their mortgage against any of the property covered by the deed of the realty company to the City Council. Their main ground for refusing to execute the release contemplated in and provided for by the written agreement of February 18, 1928, is that the golf course was constructed in part on the west side of the highway in violation of the parol agreement that it should be constructed on the east side.

In the case of *Southern R. Co. v. Day,* 140 S. C., 398, 138 S. E., 870, 873, Mr. Justice Stabler, delivering the opinion, thoroughly considered and plainly expressed the doctrine of estoppel. He quoted with ap-

proval from the case of *Bull v. Rowe,* 13 S. C., 355, the following: "The conduct which is claimed to operate as an estoppel must have induced action, the disavowal of which would be inequitable, and which, therefore, the party who holds out the inducements is estopped from disavowing. There is no estoppel without fault to the injury of another."

He also quoted from 10 R. C. L., 782, the following: "It is a rule almost of universal application that one who stands by and sees another purchase land, or enter upon it under a claim of right, and permits such other to make expenditures or improvements under circumstances which would call for notice or protest, cannot afterwards assert his own title against such person."

He also quoted from 21 R. C. L., 1160, the following: "One who with knowledge of the facts and without objection suffers another to make improvements or expenditures on, or in connection with his property, or in derogation of his rights, under a claim of title or right, will be estopped to deny such title or right to the prejudice of that other who has acted in reliance on and been misled by his conduct."

Again the opinion quotes from the case of *Nicholas v. Austin,* 82 Va., 817, 1 S. E., 132, the following, which the learned writer of the opinion in the *Southern R. Co. v. Day case* declares is "an excellent statement of law": *"Silence,* where it is so intended, or where it has that effect, to mislead a party, to his disadvantage, and to the other party's advantage, is an equitable estoppel; *and passive acquiescence estops equally with active interference.* He who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to be silent." (Italics added.)

The same principle has been thus expressed: He who would not speak when he should, shall not be heard to speak when he would.

In the light of these established principles of law let us

scrutinize the conduct, actions, and language of Mr. Welch who acted throughout for plaintiffs.

He knew that the written agreement of February 18, 1928, contemplated the construction by the City Council of Charleston of a municipal golf course on a part of the land upon which Mrs. Welch, his wife, held a mortgage to secure the bonds for the purchase money of that land, which bonds he held. He knew that that instrument provided that if and when the City Council agreed to contruct such golf course that the Edisto Realty Company was obligated to convey to the City Council of Charleston the land upon which such course was to be constructed not exceeding 120 acres, and that Mrs. Welch was obligated to release upon such deed the lien of the mortgage on the land so conveyed. Mr. Welch admits that he walked over a part, if not all of the land, with Mr. Whitsitt, the chairman of the commission appointed by the City Council to construct the golf course. Mr. Whitsitt testifies that they walked over and inspected practically all of it to determine its fitness for their purpose. Mr. Welch admits that he saw the work going on and made no protest save to Mr. Jenkins of the realty company, who said, "why should you care if you get paid for the land." He admits that he made a contract with the golf commission to do, and that he did, plowing and other work on the course on both sides of the highway, without uttering a word of protest to those in charge of the work. When examined in regard to the work he did under this contract with those in charge of the work of constructing the golf course, he made a significant remark, to wit: "After we got over part of the work and got to the place where I might have made some profit he took it out of my hands."

Is it that here lies the explanation of his belated refusal to release the property from the lien of the mortgage? The Scotch bard spake truly when he said:

"When self the wavering balance shakes,
"'Tis rarely right adjusted."

It is admitted that the City Council spent approximately $70,000.00 in constructing the golf course, draining the land, erecting a club house and caddy house, and in making other improvements.

The conduct of plaintiffs works a typical equitable estoppel which forbids that they be now permitted to enforce the lien of their mortgage against any of the land conveyed by the deed of the Edisto Realty Company to City Council of Charleston.

Plaintiffs contend by certain exceptions that the City Council is estopped to claim the release of the lien of the mortgage by its negligence and delay in demanding of the realty company that the release be executed before it entered upon the construction of the course. The work of construction was completed July 8, 1929, and the deed was executed July 26, 1929. The written agreement provides that the release shall be a part of the deed. The City Council may well have thought that they were not entitled to the deed until the work of construction was completed. When they got the deed, they demanded the release.

Appellants further contend that the deed from the realty company to the City Council is not a conveyance in fee simple such as the written agreement contemplated. Appellants' interest in the nature of the conveyance is a remote one, and the City Council has made no complaint thereabout. However that may be, Judge Greene has reached a sound conclusion thereabout. He says: "My construction of the deed from Edisto Realty Company to the City of Charleston is that the City of Charleston holds a fee-defeasible title to the land conveyed to it, subject to the continued use of the land as a golf course."

We concur in this construction of the deed.

All exceptions are overruled and the decree appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.