**The JOHN DEERE PLOW COMPANY OF ST. LOUIS, Plaintiff,**

v.

**E. F. McLEOD, Defendant.**

**Civ. A. No. 3988.**

United States District Court
E. D. South Carolina,
Charleston Division.

June 18, 1955.

B. M. Thomson, Jr., Hagood, Rivers & Young, Charleston, S. C., Jones, Williams, Dorey & Kane, Atlanta, Ga., for plaintiff.

John G. Dinkins, James Hugh McFaddin, Manning, S. C., for defendant.

WILLIAMS, District Judge.

This is an action to foreclose a lien under a written retention of title contract. The plaintiff is a Missouri corporation, the defendant is a resident of South Carolina, the amount in controversy exceeds $3,000, and this Court has jurisdiction of the cause.

The plaintiff in its complaint alleges that the defendant was a retail dealer who sold John Deere Farm Equipment in Manning, South Carolina. The complaint avers that Exhibit A is a true copy of a dealer contract between the plaintiff and the defendant for the year 1952–53, which terminated according to its terms on August 31, 1953. The complaint alleges that the plaintiff sold to the defendant goods listed in Exhibit **B** and that the defendant is indebted to the plaintiff for the purchase price of these goods in the aggregate amount of $29,-898.41. Title to these goods has been retained by the plaintiff under paragraph 14 of the aforesaid contract, and the plaintiff prays that its lien be foreclosed, judgment rendered in its favor for the principal amount stated in the complaint, together with interest and attorneys fees as alleged therein, and that the property be sold and the proceeds applied to the payment of said judgment and a deficiency judgment entered in its favor for any balance then remaining due thereon.

The defendant in his original answer denied that he was indebted to the plaintiff in any amount whatever, but in the deposition of the defendant taken by the plaintiff on January 22, 1954, the defendant admitted that, without regard to his counterclaims, the amount stated in the complaint was a correct statement of the balance due by him except for "a small credit or two" and counsel for the defendant later stipulated that there was no issue as to the amount claimed to be owing to the plaintiff subject to minor off-sets and the counterclaims.

In view of these admissions there exists no material issue of fact with reference to the amount claimed in the original complaint subject to the counterclaims set out in the answers of the defendant and it is clear that unless these counterclaims are valid and present material issues of fact the motion for summary judgment made by the plaintiff should be granted and judgment entered against the defendant as prayed. The important question there-

fore is as to the validity of these counterclaims.

In his original answer the defendant set out two separate counterclaims. In the first which is contained in his second defense and counterclaim the defendant alleged that the plaintiff had made a parol agreement with him in 1943 to the effect that he was to be the John Deere dealer in Clarendon County, South Carolina, from year to year thereafter unless and until his contract was "terminated by both parties for just and substantial cause".

The defendant said that in reliance on this contract he had spent substantial amounts and that pursuant to this agreement he had executed annual written contracts with the plaintiff under which the plaintiff was obligated to sell to him all goods ordered by him during the terms of these contracts. He alleged that the plaintiff had breached these written contracts by failing to sell to him goods ordered by him while selling the same goods to other dealers. He alleged that by reason thereof he was damaged in the sum of $400,000.

In his third defense and counterclaim, the defendant alleged that the plaintiff had made false complaints to customers and prospective customers of his for the purpose of reducing his profits and drying up his sales in order to create a fictitious reason for terminating his contract and leave him with a substantial amount of goods, a large investment in real estate. The defendant charged plaintiff with a fraudulent breach of contract and claimed that as a result he had been injured and damaged in the sum of $600,000.

In response to a question from the Court counsel for the defendant stipulated that the allegations in this answer and counterclaim do not constitute an action for slander but are stated in connection with the alleged breaches of contract charged in the second and third defenses and counterclaims and this stipulation has been set out in the Order of Court entered in August 1954.

From the record it is clear that the written contract between the parties terminated according to its terms on August 31, 1953 and that the plaintiff was under no legal duty to make any new contracts with the defendant or to continue to have business relations with him after that date unless by reason of the alleged parole agreement under which the defendant was alleged to have the right to continue from year to year unless and until his contract was terminated for just and substantial cause.

For that reason the existence and validity of such an agreement is fundamental to the counterclaims as stated by the defendant and the Court has given careful consideration to this question. In undertaking to determine this issue the Court has carefully reviewed the deposition of the defendant, the exhibits in the record and the affidavits submitted by the parties and has concluded that the conversations and correspondence between the parties in 1943 and subsequent thereto, even as described by the defendant himself, were too vague and indefinite to constitute a valid or binding contract between the parties, and the Court therefore finds that no such contract was made or existed between the parties. The following authorities sustain this finding: International Shoe Co. v. Herndon, 135 S.C. 138, 133 S.E. 202, 45 A.L.R. 1192; Jordan v. Buick Motor Co., 7 Cir., 75 F.2d 447, and Bushwick-Decatur Motors v. Ford Motor Co., 2 Cir., 116 F.2d 675.

In addition, even if there had been such a contract, which the Court finds was not the case, any such agreement would have been merged into and superseded by the subsequent annual written contracts between the parties and all of these contracts have been merged into and superseded by the last of these annual written contracts. A copy of this contract is attached as Exhibit A to the complaint and this contract expressly provides in paragraph 35 thereof as follows:

"*35. Execution of contract; alterations or amendment.* This con-

tract contains the entire understanding between the parties, and when accepted in writing by the Company at its office in Chamblee, Georgia, shall become effective as provided in Clause 1 hereof. It shall be executed in duplicate, one copy to be retained by the Dealer and the other by the Company. In case of any discrepancy between the provisions of the two executed copies the provisions in the copy retained by the Company shall govern. This contract cannot be altered or amended, or any of its provisions waived, on behalf of the Company except in writing by a duly authorized officer of the Company. Upon this contract becoming effective the term of any general dealer's contract which may then be in effect between the parties shall expire as of the beginning of the term of this contract, provided, however, that the expiration of such prior contract shall not affect any claims which either party may have against the other thereunder as of the date of expiration."

From a review of this annual written contract it is clear that it covers and was intended to cover all of the mutual obligations of the parties with respect to the dealership of the defendant in Manning. Without the written agreements any conversations between the parties would have been too vague and indefinite to constitute a contract. Where a contract by its terms provides that it is the entire understanding between the parties, they are bound by the terms of the agreement and all prior contracts are superseded thereby and merged therein. Moore v. Moore, 137 S.C. 366, 135 S.E. 363; Welch v. Edisto Realty Co., 170 S.C. 31, 169 S.E. 667, and Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 65 F.2d 1001.

With reference to the second contention made by the defendant, to the effect that there was a breach of the annual written contract because the plaintiff failed to deliver all merchandise ordered by the defendant, an examination of the written contract itself discloses that in paragraph 11 this contract expressly provides as follows:

"11. *Contingencies affecting delivery.* The Company shall be under no liability to the Dealer if it delays shipment or fails to sell, ship or deliver any goods to the Dealer if such delay or failure is due to fire or other elements, war, riot, strikes, labor disturbances, transportation difficulties, the decree or order of any court or government, inability of the Company to obtain the goods, or any cause beyond the Company's control. If the demand from all sources exceeds the Company's available supply the quantity of goods to be allotted to the Dealer shall be determined solely by the Company, in which event the Company shall not be liable for having failed to furnish the Dealer with all or any of the goods ordered by him."

From this it is clear that failure to deliver goods for any of the reasons enumerated above would not constitute a violation of the contract and that in order to establish a breach of contract it is not sufficient for the defendant to merely aver or show that goods ordered by him were not delivered but he must further allege and prove that the goods were available and they could have been delivered and that the plaintiff failed to make delivery, not for any of the reasons enumerated in the foregoing clause, but in direct violation of its contract obligation.

This the defendant has not done. There is in this record no evidence that the plaintiff has at any time failed or refused to deliver goods which were available for delivery to the defendant when ordered by him. On the contrary evidence submitted by the plaintiff affirmatively shows that goods were, without exception, delivered to the defendant whenever available and that in no instance did the plaintiff fail to deliver goods except when they were not available or were in short supply for one of the reasons enumerated in the clause

set out above. The Court therefore finds and holds that no material issue of fact is presented with reference to this contention made by the defendant.

[5] The record also shows without contradiction that the plaintiff and defendant made monthly settlements of account on the 25th day of each month. These monthly statements showed in detail the amounts due by defendant, payments and credits to which he was entitled and the net balance due plaintiff. The last monthly settlement was made on June 10, 1953 and appears as Exhibit 10 to the deposition of the defendant. It shows over the signature of the defendant an admitted balance due plaintiff of $30,822.12 as of May 25, 1953.

The defendant refused to make any settlements after this settlements of June 10, 1953. The Court finds that the defendant is bound by these monthly statements and that they constitute accounts stated and that the defendant could not in any event recover for any breach of contract which occurred prior to the date of the last of these monthly settlements unless and until this account stated had been set aside for legal cause shown. Gem Chemical Co. v. Youngblood, 58 S.C. 56, 36 S.E. 437.

When this case came on for hearing on this motion for summary judgment the defendant asked leave to amend his answer and this request was granted. The defendant then amended his answer to set up a fourth defense and counterclaim in which he again alleged an oral agreement in 1943 to continue him as a permanent John Deere Dealer in Manning. He further set out that he did not purchase the goods listed on Exhibit B under the terms of his dealer contract, but that he was under the terms of this contract merely holding them on consignment and that he held them, together with the proceeds of other goods sold by him, in trust for the plaintiff. He denied that he had purchased these goods or that they had been sold to him by the plaintiff, and alleged that the plaintiff had made it impossible for him to sell the goods so held in trust by him and

that by reason thereof he was damaged in the sum of $50,000.

The validity of this contention depends entirely upon proper construction and meaning of the written contract between the parties, and after a careful review and study of this contract the Court finds as a fact and holds as a matter of law that this contract constituted a contract of conditional sale under which the defendant was obligated to pay the purchase price of the goods delivered to him by the plaintiff under the terms of the dealer agreement. The provisions with reference to reservation of title and the handling of the proceeds received upon the resale of these goods by the defendant are for security only and do not affect or qualify the obligation incurred by the defendant to make payment for the goods which he ordered and which were delivered to him.

The Court therefore finds as a matter of fact and holds as a matter of law that the defenses and counterclaims set up in the answer of the defendant as amended constitute no valid defense to the action brought by the plaintiff and set out no valid counterclaims against the plaintiff in favor of the defendant, and the Court therefore makes the following specific findings of fact and conclusions of law, to wit:

#### Findings of Fact

1. That the plaintiff and the defendant entered into a written contract for portions of the years 1952 and 1953 signed by the defendant on the 30 September 1952, and accepted by the plaintiff on the 8 October 1952, which, under its terms, expired on 31 August 1953.

2. That there was no agreement for the defendant to become the continuous and permanent dealer for the plaintiff at Manning and there was no agreement that his contract as such should be continued from year to year until terminated for just and substantial cause.

3. That the plaintiff has made delivery of all goods ordered by defendant except goods which were not available and which plaintiff did not have to de-

liver for reasons enumerated in paragraph 11 of the contract.

4. That on June 10, 1953 the defendant signed a settlement of account with the plaintiff acknowledging that he owed the plaintiff $30,822.12 as of May 25, 1953.

5. That the defendant is indebted to the plaintiff for the amount claimed in the complaint, subject to small credits and minor set-offs which the defendant may show to the Court prior to the entry of judgment.

6. That an attorney's fee of 10% of the amount of principal and interest due is provided for in the written contract and is a reasonable fee in this case and is allowed by the Court.

### Conclusions of Law

1. That the written contract, which is Exhibit A to the plaintiff's complaint, was a valid and binding agreement and the only existing agreement between the plaintiff and the defendant, and that this contract expired on August 31, 1953.

2. That there was no oral contract between the parties and that all prior negotiations or contracts were merged into and superseded by the aforesaid dealer contract of 1952–53, which is Exhibit A to the complaint.

3. That at the expiration of said dealer contract on August 31, 1953 the plaintiff was under no obligation to renew the same or to make a new contract or to continue to have business relations with the defendant.

4. That the failure and inability of the plaintiff, to deliver certain goods ordered by the defendant which were in short supply and not available did not constitute a violation of the contract between the parties under the terms of paragraph 11 thereof.

5. That the settlement of account made between the plaintiff and defendant on June 10, 1953 in which the defendant admitted an indebtedness of $30,822.12 constituted an account stated between the parties.

6. That the defendant could not in any event recover on account of any breach of contract which occurred prior to the date of this statement of account in the absence of any showing of legal cause to set same aside, and no such cause has been shown.

7. That under the annual written dealer contracts between the parties goods ordered by the defendant were sold to him by the plaintiff and were bought by him and the defendant was liable for the purchase price of these goods.

8. That the dealer contracts between the parties provided for a conditional sale of the goods ordered by the defendant with title retained in the plaintiff as security for the purchase price which the defendant was obligated to pay, and said dealer contracts were not mere contracts of consignment as contended by the defendant in his fourth defense and counterclaim.

9. That there is no material issue of fact presented in any of the counterclaims of the defendant and that the defendant is not entitled to any recovery against the plaintiff on any of the counterclaims.

10. That the plaintiff is entitled to recover 6% interest and 10% attorney's fee as set forth in the written contract.

11. That the plaintiff has a valid lien on the property sold under the terms of the written contract and is entitled to foreclose its lien upon the property described in Exhibit B to the complaint and to bar the defendant's equity of redemption.

12. That the property described on Exhibit B attached to the complaint be sold to satisfy the debt of the defendant to the plaintiff, and that in the event a sufficient sum is not realized from the sale of said property to pay said debt in full, including interest, attorney's fees and costs of Court, that a judgment for the deficiency be entered in favor of the plaintiff and against the defendant.

13. That the plaintiff is entitled to summary judgment against the defend-

ant and that this Court will enter judgment as soon as the amount of the small credits and set-offs have been determined by the Court.

14. That the defendant pay the costs of Court in this action.

It Is Ordered that the defendant have 10 days in which to file an affidavit showing the minor off-sets and small credits to which the defendant is entitled. In the event that the defendant does not file such an affidavit within the time given, the Court will proceed to order judgment for the amount claimed in the complaint. In the event that these items are not admitted by the plaintiff when the affidavit is filed by the defendant, the Court will take such action as may be proper to dispose of this item and enter final judgment, carrying out the terms of this order.