16537

ADAMS *ET AL.* v. ADAMS *ET AL.*

(66 S. E. (2d) 809)

*Messrs. I. A. Smoak,* of Walterboro, and *D. McK. Winter,* of Columbia, *for Appellant,*

*Messrs. Padgett & Moorer,* of Walterboro, and *Walker, Walker & Jenkins,* of Summerville, *for Respondents,*

August 27, 1951.

TAYLOR, Justice.

This action was brought in the Court of Common Pleas for Colleton County on June 5, 1945, seeking to recover possession of a house and eighty acres of land, damages for certain timber alleged to have been cut therefrom and compensation for the use of said premises. The answers set up the defense of title by deed, adverse possession, tax title and estoppel.

The matter came on to be heard before the Honorable J. Henry Johnson, who, at the conclusion of the evidence, granted plaintiffs' counsel's motion for a directed verdict, and thereafter without prejudice, the rental value having been agreed upon, a verdict was directed against the defendant, T. M. Adams, for the sum of $253.20.

Appellant now comes to this Court upon the following questions as set forth in appellant's brief:

"1. Was it error for the trial judge to refuse to submit to jury the issue of adverse possession?

"The specific issues being:

"a. Where the youngest plaintiff testified she was born in 1914, but her affidavit made in 1930 to get a marriage license showing she was then 18 years of age was placed in evidence, and she admitted she signed it. In connection with the fact, she brought in a year book in which she testified she copied her age from the family Bible, instead of bringing the Bible. Was it error to refuse to submit to the jury the issue as to which was her true age?

"b. Where the father had been in adverse possession of land seven years and made a deed to his son, reserving a life estate, then died two years later and the heir went into possession and continued in possession past the statutory period of ten years, was it error to refuse to submit to the jury the issue of adverse possession?

"2. Does evidence and facts, under the circumstances of this case, raise an issue of fact for consideration by the jury, as to whether plaintiffs were estopped to deny title of the son or defendants to the land, and had acquiesced therein and which the trial Court erred· in refusing to· submit to the jury?"

The youngest respondent, Martha Redman Adams, testified that she was born on January 8, 1914, her information being obtained from the family Bible, and introduced into the record a 1926 year book of the U. S. Department of Agriculture wherein respondent had copied from the family Bible in 1930 in her handwriting the entries therein. Appellant introduced into evidence the marriage license of respondent, Martha Redman Adams, dated September 13, 1930, wherein her age was set forth at that time as eighteen years. Were this statement true, she became of age January 8, 1933, and her birth date would be January 8, 1912, instead of January 8, 1914. Respondent admitted that the signature on the affidavit was hers but testified that she made this affidavit stating that she was then eighteen years of age for the purpose of obtaining a marriage license.

Appellant takes the position that his possession of the property in question can be tacked on to that of his predecessor for the purpose of computing the time of the running of the statute. If this contention is correct, it would make no difference whether. respondent, Martha Redman Adams, was born in 1912 or 1914, as in the former instance she would have become of age in January, 1933, at which time the statute would commence to run and appellant's grantor, T. A. Adams, would have had possession of the property from such date until 1940, at which time he made the deed to appellant, a period of seven years. This action was commenced in 1945, giving appellant the benefit of five more years or twelve years in all since the statute commenced to run; or if he is incorrect in his contention that his period of possession can be tacked on to that of his

predecessor, then the date of her birth, whether in 1912 or 1914, cannot affect the result in this case in that he would not have had possession for the statutory period. The Trial Judge therefore committed no error in refusing to submit this question to the jury.

We will now proceed to discuss the second half of Question 1. R. A. Redman, Sr., died intestate as to the real estate which is the subject of this action on July 31, 1929, leaving as children R. A. Redman, Jr., one of the respondents herein, Martha Redman Adams, the other respondent and Gertrude Redman Adams, who prior to this action conveyed her undivided interest in said property to Martha Redman Adams.

Martha Redman Adams testified that she was born January 8, 1914, making her 15 years of age at the time of her father's death and 16 years old September 13, 1930, the date of her marriage to L. C. Adams, and 21 years of age on January 8, 1935. As heretofore stated, appellant disputes this by way of the marriage license which was issued to respondent, Martha Redman Adams, September 13, 1930, and contends that Martha Redman Adams became of age January, 1933.

T. A. Adams on July 12, 1940, executed a deed to appellant, T. M. Adams, *inter alia,* to the property which is the subject of this action, reserving to himself a life estate therein and died approximately two years later, February 2, 1942.

There is no showing in the record as to any acts of possession or ownership adverse to that of the Redmans prior to the death of R. A. Redman, Sr., on July 31, 1929; therefore, considering the matter in the light most favorable to appellant, we find that T. A. Adams entered into possession of said property on August 1, 1929, and if the respondent, Martha R. Adams, was 17 years of age on the date of her father's death, as contended by the appellant, she was under the disability of infancy, and the ten year period required to establish title by adverse posses-

sion would not commence to run against her, or any of her co-tenants, until she became 21 years of age, on January 8, 1933. *Boozer v. Teague,* 27 S. C. 348, 3 S. E. 551; *McIntosh v. Kolb,* 112 S. C. 1, 99 S. E. 356; *Frady v. Ivester,* 118 S. C. 195, 110 S. E. 135; *Faysoux v. Prather,* 1 Nott. & McC. 296, 10 S. C. L. 296. It would, therefore, be impossible for such possessions to ripen into title prior to January 1, 1943, which was approximately one year after the death of T. A. Adams.

Appellant, T. M. Adams, contends that his possession can be tacked on to that of T. A. Adams, thus creating a connected period in excess of the ten year period necessary to establish title by adverse possession.

In the case of *Ellen v. Ellen,* 16 S. C. 132, cited by both appellant and respondent, this Court stated:

"In this case, as it has been already stated, David Ellen, some four years before the statutory period of adverse possession—ten years—had expired, conveyed the land in dispute to the plaintiff, still holding possession, however, under the terms of his deed, until the ten years had expired, when he died.

"Now the question is: Did his deed to plaintiff, under these circumstances, operate as a good conveyance, which entitles him to recover in this action? Or, having been executed before the expiration of the ten years, did it convey any interest whatever, although he continued to hold adversely until the full statutory period ran out? The solution of this question will depend upon the further question: Does adverse possession give or create title which, by operation of law, is conferred upon a trespasser at the end of ten years? Or is adverse possession for ten years simply the evidence of a title which the law presumes the party in possession of when he first entered?

"There is no doubt that title to land growing out of long-continued possession—long enough to presume a grant, deed or other muniment of title—attaches at the beginning of

possession on the presumption of law that a deed was executed at that time which has since been lost. Trustees of *Wadsworthville Poor School v. McCully,* 11 Rich. [424] 426; 1 Greenl. Evid. 23, Sec. 17. So, too, as to those rights which arise by prescription. The law presumes a grant or deed in favor of the party claiming the right when he first began to enjoy it. 2 Greenl. Evid. 992.

"Now, does the title, by adverse possession, rest upon this doctrine? If so, the deed of David Ellen to the plaintiff, although executed before the statutory period of ten years expired, would be a good deed; his continuing to hold for the ten years affording the evidence that when he entered, he entered with title, which had subsequently been lost. I was disposed at first to take this view of the subject, and to believe that this doctrine applied as well to adverse possession as to titles arising by presumption of grant or prescription. This seemed to me to be most philosophic and more in harmony with the rights of the parties in such cases than any other; but upon the re-argument of this case, when special attention was directed to this point, it seems clear, upon the authority of the decided cases in this State, that the true doctrine is the other way. According to these decisions, an adverse possessor is a trespasser from the beginning to the end. His possession begins in trespass, and so continues until it ripens into a right at the end of the statutory period of ten years. During this time he has nothing that he can convey; nor can his possession be tacked with that of his grantee so as to defeat the title of the true owner.

"He who claims under the presumption of a grant, it is true, is entitled to stand on the same ground as if he produced the grant. Such a case, however, is wholly unlike a title under the Statute of Limitations. *McLeod v. Rogers & Gardner,* 2 Rich. [19], 21; see, also, *King v. Smith,* Rice [10], 12; *Williams v. McAliley,* Cheves 200. The Statute of Limitations does not rest upon the presumption of a previous deed. It simply operates as a bar to the plaintiff's action; and, as a general rule, no one can interpose

this bar except such as may have held for the period prescribed by the statute. Under the authorities settling this doctrine, in the opinion of the Court, David Ellen's deed to plaintiff having been executed before the statutory period expired, and before his trespass had ripened into a right, conveyed no title."

T. A. Adams' deed to appellant, T. M. Adams, was executed prior to the statutory period and therefore before his trespass had ripened into a right and conveyed no title. The possession of the grantor cannot be tacked on to that of the grantee so as to defeat the title of the true owner. A new entry was made and the statute began to run anew with respect to appellant as of that date. For the foregoing reasons, we are of the opinion that that Trial Judge committed no error in failing to submit the question of adverse possession to the jury for their consideration.

The next question posed is whether or not the Trial Judge committed error in refusing to submit the question of estoppel to the jury on the part of respondent. The essential elements of an equitable estoppel as related to the party claiming the estoppel are (1) lack of knowledge and the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopper, (3) action based thereon of such a character as to change his position prejudically. 19 Am. Jur. 643, Sec. 43. In Sec. 87, page 744 of the same volume, we find:

"If, at the time when he acted, the party claiming the estoppel had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment."

Appellant seeks to invoke the doctrine of estoppel on the grounds: (1) that T. A. Adams prior to his death attempted to divide his real estate equally among his children. L. C.

Adams, husband of respondent, Martha Redman Adams, received a share thereof. The property in question was included in the share of appellant, T. M. Adams, and, if his contention herein does not prevail, an unfair division of the lands of T. A. Adams will result. (2) That appellant, T. M. Adams, made improvements on the property in question without respondents' making any claim thereto until such improvements had been completed.

The respondent, Robert A. Redman, did not marry into the Adams family; therefore, his standing silent at the time of the conveyances of T. A. Adams to his children could not effect an estoppel as to him. Respondent, Martha Redman Adams, received no benefit by reason of such division by said T. A. Adams among his children and, as we have heretofore stated, at the time of such conveyances had no title to the real estate in question. It is apparent from the record that the improvements thereon and the complaints, made by respondents, Martha Redman Adams and Robert A. Redman, were made at or about the same time.

Appellant, T. M. Adams, had every means of knowing whether or not his father, T. A. Adams, had title to the land in question and is therefore in no position to claim estoppel by reason of the silence of Martha Redman Adams. By the exercise of reasonable diligence he could have known that the legal title to the property was in the Redman heirs.

"The more accurate theory, which is supported by the weight of authority, is that the existence of an estoppel becomes a *prima facie* presumption of fact, where it appears that the holder of the interest in question remained silent with regard to it, and that this presumption is rebutted where the evidence shows that, by the exercise of reasonable diligence, the purchaser might have discovered the actual situation." 19 Am. Jur., Sec. 119, page 777.

"To successfully assert the doctrine of estoppel, a party litigant must show that he was without knowledge or any means of knowledge of the facts and

circumstances upon which he predicates the claim of estoppel and that without this knowledge or means of knowledge he was influenced by the conduct or language or silence amounting to a representation of facts, or a concealment of material facts by the party sought to be estopped, and that in reliance thereon he changed his position to his injury and damage." *Hubbard v. Beverly*, 197 S. C. 476, 15 S. E. (2d) 740, 742, 135 A. L. R. 1206.

Appellant had only to refer to the public records of Colleton County to ascertain the true status of the property in question if he did not have actual knowledge and was bound thereby.

Both respondents and appellant filed excellent briefs in this case. However, we are of the opinion that all exceptions should be dismissed and the judgment of the lower court affirmed, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.