## 1689

SOUTHERN DEVELOPMENT LAND AND GOLF COMPANY, LTD., Respondent v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, Appellant.

(409 S.E. (2d) 428)

Court of Appeals

*G. Dana Sinkler, Robertson & Sinkler,* and *Elizabeth T. Thomas, Sinkler & Boyd,* Charleston, *Michael W. Battle, Lovelace & Battle,* Conway, and *John Tiencken, S.C. Public Service Authority,* Moncks Corner, *for appellant.*

*Thomas E. McCutchen* and *Jeter E. Rhodes, Jr., Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondent.*

Heard May 14, 1991.

Decided Aug. 12, 1991.

CURETON, Judge:

In this action for an injunction, Southern Development Land and Golf Company, Ltd. (Southern) challenges the right of the South Carolina Public Service Authority (Santee Cooper) to condemn a portion of Southern's property in Horry

County for the construction of a high voltage transmission line. The case was referred to the master-in-equity for final judgment with direct appeal to the Supreme Court. The master granted the request for the injunction. He enjoined Santee Cooper from proceeding with the condemnation of the right-of-way and required Santee Cooper to select a different route other than one along the property of Southern. The master also prohibited Santee Cooper from using a preexisting easement across Southern's property for a portion of the transmission line. Santee Cooper appeals the decision of the master. We reverse in part, vacate in part and remand.

Southern's action is based upon *S.C. Code Ann.* Section 28-2-470 (Rev. 1991). This code section provides that a condemnee's action challenging the condemnor's right to condemn must be brought in a separate proceeding from the condemnation action. Under prior caselaw, such a proceeding was in equity in the court of common pleas. *Seabrook v. Carolina Power & Light Co.*, 159 S.C. 1, 156 S.E. 1 (1930). Since this is an equitable action for an injunction this court may review the findings of fact of the master based upon our own view of the preponderance of the evidence. *Taylor v. Hoppin' Johns Inc.*, — S.C. —, 405 S.E. (2d) 410 (Ct. App. 1991).

The master issued the injunction based upon his findings that (1) Santee Cooper was estopped from using the proposed route based upon certain representations of its officers which were relied upon by Southern to its detriment and (2) Santee Cooper clearly abused its discretion in selecting the transmission line route because it did not consider or improperly considered certain criteria. We address these two findings separately.

## I.

The master concluded Santee Cooper had no right to condemn a portion of Southern's property for the construction of an electric transmission line because Santee Cooper was equitably estopped due to certain representations made by one of its executive vice-presidents to the presidents of Southern. We reverse this holding by the master.

Southern relied upon two communications between Joseph Norman, executive vice-president of Santee Cooper, and Ken-

neth Tomlinson, president of Southern, to establish estoppel. The first communication was a telephone conversation on June 11, 1987. Tomlinson was at the real estate closing on the purchase of a tract of land for a planned golf course and residential development. He called Norman based upon the suggestion of a former chairman of the board of Santee Cooper. It is not clear when he was advised to contact Norman but he did it on the day of closing. During the conversation Tomlinson related to Norman his plans concerning the development and the need to have two existing power lines buried in order to contribute to the aesthetics of the development. The conversation centered on these two existing lines and what Santee Cooper could do to assist Southern. There was no inquiry by Southern regarding Santee Cooper's future expansion plans. The record indicates Santee Cooper had been considering the construction of a high voltage transmission line in the general area to service two area substations. By June of 1987 a proposed route had been chosen by the transmission design department of Santee Cooper. This route included a portion of the property which Southern was in the process of buying. No discussion took place between Norman and Tomlinson about the transmission line. Southern relies upon Norman's silence in asserting estoppel. Tomlinson testified he would not have purchased the property if he had been made aware of Santee Cooper's plans to construct the transmission line along a portion of the property.

The second representation took place in March of 1988. By this time Southern had been made aware of the plans for the transmission line during a meeting between Southern and Santee Cooper representatives concerning the pre-existing lines. Tomlinson testified Norman advised him during March that Santee Cooper had decided to bury the transmission line or move it to another location. Norman denied the representation. Tomlinson also testified Norman repudiated this representation approximately one month later in April. Tomlinson testified he had continued construction on the golf course during this one month interval based upon the representation.

The burden of proof is upon the party who asserts an estoppel. *Frady v. Smith*, 247 S.C. 353, 147 S.E. (2d) 412 (1966). The elements of estoppel as to the party estopped are (1) conduct by the party estopped which

amounts to a false representation or concealment of material facts or which is calculated to convey the impression that the facts are otherwise than and inconsistent with those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts. As related to the party claiming the estoppel, the elements and (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Id.; Oswald v. County of Aiken,* 281 S.C. 298, 315 S.E. (2d) 146 (Ct. App. 1984).

Southern fails to establish estoppel based upon the representations of Norman. As to Norman's actions in June of 1987, he was the executive vice-president for commercial operations at Santee Cooper. He did not have direct authority over transmission lines which was under the authority of engineering. Norman testified he did not know the transmission line was going to go across the property Tomlinson was purchasing. He made no affirmative representation to Tomlinson about transmission lines in the conversation. He was not asked to make any inquiry concerning future Santee Cooper plans. Southern's argument that Norman made a representation by his silence fails because Southern did not prove Norman had knowledge of the transmission line at the time of the conversation.

Because of such lack of knowledge, we hold Norman's failure to tell Tomlinson about the proposed transmission line does not constitute such conduct as amounts to a false representation or concealment of a material fact. "[M]ere innocent silence or inaction will not work an estoppel." 28 Am. Jur. (2d) *Estoppel And Waiver* Section 53, at 667 (1966). In order for a party to be estopped by silence, he must manifest an intent to mislead by his silence. *Id.*

Moreover, it is clear under the facts of this case that Southern had the means of determining Santee Cooper's plans for future expansion of its system by simply making an appropriate inquiry. Such an inquiry would have been a prudent act given the existence of the pre-existing easement across the property near Little River Neck Road. The easement was a

matter of record. Southern's failure to inquire precludes application of the doctrine of estoppel. See *Adams v. Adams*, 220 S.C. 131, 66 S.E. (2d) 809 (1951) (true status of property could be ascertained by reference to public records).

As to the second conversation, Southern had already purchased all of the property for its development by the time this representation occurred in March of 1988. Southern has not demonstrated a detrimental change of position in the purported representation. While Southern may have incurred some construction costs during the one month period between the alleged statement and its repudiation, these costs are not shown in the record and therefore do not establish any basis for the application of the equitable remedy of an injunction.

Based upon this court's review of the record, the master erred in holding Santee Cooper was estopped from condemning a portion of Southern's property.

## II.

The master also concluded Santee Cooper should be enjoined from condemning a portion of Southern's property and from using an existing easement on Southern's property because Santee Cooper clearly abused its discretion in the selection of a route for the transmission line. We vacate the decision of the master and remand to him with instructions that he direct Santee Cooper to re-evaluate all the alternate routes in accordance with the criteria outlined below and exercise its discretion in a choice of a route based upon that analysis. See *Florida Power Corp. v. Gulf Ridge Council*, 385 So. (2d) 1155, 1157 (Fla. Dist. Ct. App. 1980).

Under *S.C. Code Ann.* Section 28-2-210 (Rev. 1991), a condemnor may institute an action for "the acquisition of an interest in any real property necessary for any public purpose." It is not disputed that the transmission line is to be constructed for a public purpose. It is also uncontested that a transmission line is necessary in some location. The dispute involves the location of the line as chosen by Santee Cooper.

The disputed route chosen by Santee Cooper follows the eastern property line of Southern's planned development and then crosses the property near Little River Neck Road. This road bisects Southern's property which lies on both sides of

the road. Santee Cooper had a pre-existing easement near Little River Neck Road. According to Southern's witnesses, the transmission line will be visible from a number of the golf holes and will detract substantially from the aesthetics of the golf course and planned residential development. Without reciting the testimony, it is sufficient to say Southern planned a prestigious golf course and residential area with aspirations of the course being ranked in the top one hundred by the golf magazines.

The route for the transmission line was chosen by John Rag, a transmission design engineer for Santee Cooper. Rag testified he considered the criteria of safety, reliability, cost, and aesthetics in chosing the route. At the time the route was chosen in 1987 Southern had not purchased the property. The land was undeveloped and for sale. Santee Cooper had a pre-existing easement running close to Little River Neck Road. Santee Cooper witnesses testified no public notice was given concerning the proposed transmission line. No property owners were contacted before the route was chosen regarding anticipated use of their property. Further, while cost was considered by Santee Cooper the cost element involved anticipated construction cost of the line only without substantive regard to the cost to acquire the land.

After Southern became aware of Santee's plans, Southern requested that Santee Cooper consider another route because of the potential effect of the transmission line on the development. Members of the board of directors and officers of Santee Cooper met with Southern representatives to tour the golf course and hear about the plans of Southern. Two alternate routes were proposed to Santee Cooper by Southern. Neither of these routes involved property of Southern. There is testimony Santee Cooper representatives considered these other routes but rejected them. Southern disputes the efforts made by Santee Cooper to validly consider the proposed alternatives.

Once the notice of condemnation was given to Southern in October of 1988, Southern instituted this action to challenge Santee Cooper's right to condemn its property. At the trial, Southern offered testimony concerning the various routes. An expert in electrical transmission design testified for Southern that the alternate routes proposed by Southern were superior

to the route chosen by Santee Cooper for reasons including safety, reliability, and cost of construction. Southern also offered an appraiser who testified about the cost of land acquisition for the various routes. Santee Cooper offered its own evidence regarding these matters.

The master found the total cost for the route chosen by Santee Cooper including land acquisition cost would be $5,762,000. The cost for the two alternate routes proposed by Southern would be $1,284,000 and $1,315,000. He found no material difference in the reliability of the three routes although he considered the two alternate routes somewhat safer due to their distance from a nearby airstrip and also more aesthetically pleasing due to the potential effect of the Santee Cooper route on Southern's development. The master issued the injunction prohibiting the condemnation.

In his legal conclusions the master found Santee Cooper clearly abused its discretion in the selection of the route for the transmission line. The master relied upon the case of *Florida Power & Light Co. v. Berman,* 429 So. (2d) 79 (Fla. Dist. Ct. App. 1983), *petition denied,* 436 So. (2d) 98 (Fla. 1983). In that decision, the Florida District Court of Appeal held that Florida law required a condemning authority to consider five criteria in deciding which route to select and which land to condemn. The criteria were (1) availability of an alternate route; (2) cost; (3) environmental factors; (4) long-range planning; and (5) safety considerations. *Id.* at 82. While a condemning authority did not necessarily abuse its discretion by choosing one route over another suitable route, the Florida court held the condemning authority did abuse its discretion by making a selection of a route without weighing and considering the factors. *Id.*

The parties have not cited any reported South Carolina case in which a planned condemnation was permanently enjoined by a court because the court found the condemning authority abused its discretion in the selection of a chosen route. In *Seabrook v. Carolina Power & Light Co.,* 159 S.C. 1, 156 S.E. 1 (1930), the South Carolina Supreme Court upheld the issuance of an injunction *pendente lite* where a property owner claimed the proposed location of a power line over his property was unnecessary and would destroy valuable shade trees. However, a temporary injunction merely maintains the status

quo until a resolution of a dispute upon the merits. The case does not address the issue of a permanent injunction.

The legal principle enunciated in the South Carolina caselaw is that a court of equity will not interfere with the exercise of the condemnation power unless the condemning authority has acted in bad faith, fraudulently, or with a clear abuse of discretion. *Cameron v. City of Chester*, 253 S.C. 574, 172 S.E. (2d) 306 (1970); *Sease v. City of Spartanburg*, 242 S.C. 520, 131 S.E. (2d) 683 (1963); *Atkinson v. Carolina Power & Light Co.*, 239 S.C. 150, 121 S.E. (2d) 743 (1961). The cases have not outlined what constitutes a clear abuse of discretion in the condemnation context.

A trial judge abuses his discretion in a ruling when the ruling is controlled by error of law or is without evidentiary support. *Thompson v. Hammond*, 299 S.C. 116, 382 S.E. (2d) 900 (1989). In the utility rate making context, the commission is generally given a wide range of discretion in rate making, but the discretion cannot be exercised without a factual basis to support the commission's decision. *Hamm v. S.C. Public Serv. Comm'n*, 295 S.C. 429, 368 S.E. (2d) 911 (1988); *Parker v. S.C. Public Serv. Comm'n*, 280 S.C. 310, 313 S.E. (2d) 290 (1984). Under the South Carolina Administrative Procedures Act, a reviewing court may reverse a decision of an administrative body if it finds the administrative findings are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *S.C. Code Ann.* Section 1-23-380(g)(6) (Rev. 1986). A decision is deemed arbitrary under this section if it is "without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards." *Deese v. S.C. State Bd. of Dentistry*, 286 S.C. 182, 184, 332 S.E. (2d) 539, 541 (Ct. App. 1985).[1]

The record indicates that although Santee Cooper asserted it utilized the criteria of safety, reliability, cost, and aesthetics in selecting a route no concrete consideration was given to land acquisition cost. Santee Cooper wit-

---

[1] The APA does not apply in this case. Santee Cooper's right to condemn is governed by the South Carolina Eminent Domain Procedure Act. *S.C. Code Ann.* Section 28-2-10 through -510 (Rev. 1991).

nesses testified they assumed all land in the general area was worth the same. When Santee Cooper employees considered the alternate routes proposed by Southern, their cost estimates presented to the board of directors did not include land acquisition costs. No notes or memoranda were kept by Santee Cooper employees of their analysis. The decision making process was departmentalized with the need for a transmission line decided by system planning; the route chosen by the design department; and the right of way department was required to secure the property for the chosen route.

By utilizing the factors of safety, reliability, aesthetics, and cost, Santee Cooper has established legitimate criteria for a rational decision making process and a valid exercise of discretion. This court does not imply such a list of factors is exhaustive. Other condemning authorities may have other legitimate criteria they consider. However, under the facts of this case, the failure to legitimately consider land acquisition costs indicates Santee Cooper's choice of a route lacks a factual basis. The master found Santee Cooper's chosen route would cost almost four times the amount of the two alternates proposed by Southern. Santee Cooper merely contends it considered all land values equal. Land acquisition cost is a basic component of cost and should be considered by a condemning authority. This does not mean Santee Cooper or any other condemning authority in the exercise of its discretion may not choose a route which costs more than another route. Under some circumstances it is conceivable a more costly route may be chosen in a valid exercise of discretion based upon factors other than cost.

We vacate this portion of the master's decision and remand with instructions that the master direct Santee Cooper to reevaluate its proposed route and the alternate routes proposed by Southern. In this evaluation, Santee Cooper should consider its criteria of safety, reliability, aesthetics, and costs along with any other appropriate factors such as environmental conditions and long range area planning by public authorities. The cost factor should include land acquisition cost. Santee Cooper should then exercise its discretion in the choice of a route based upon a reasoned analysis of the relevant factors. By this opinion we do not imply that any route previously considered is eliminated from the consideration process or that

any new route cannot be considered. We simply hold that a condemning authority must exercise its discretion by a rational decision making process which is supported by facts.

The master also held that Santee Cooper could not utilize a pre-existing easement across Southern's property near Little River Neck Road. We reverse that portion of the master's decision. The easement was a pre-existing property right. It granted Santee Cooper a perpetual easement for "the construction and maintenance of an electric transmission line. . . ." The easement was a matter of record when Southern purchased the property. By reversing this portion of the master's decision we do not imply Santee Cooper must utilize the easement when it is considering the proposed location of the transmission line.

Reversed in part, vacated in part, and remanded.

BELL and GOOLSBY, JJ., concur.

