23772

SOUTHERN DEVELOPMENT LAND AND GOLF COMPANY, LTD., Petitioner v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, Respondent.

(426 S. E. (2d) 748)

Supreme Court

*Thomas E. McCutchen, Jeter E. Rhodes, Jr.,* and *John C. Bradley, Jr.,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for petitioner.*

*G. Dana Sinkler* and *Elizabeth T. Thomas, of Robertson & Sinkler,* Charleston, *Michael W. Battle,* of *Loveless & Battle,* Conway, and *John Tiencken,* of the *South Carolina Public Service Authority,* Moncks Corner, *for respondent.*

Heard June 3, 1992.

Decided Jan. 4, 1993.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

FINNEY, Justice:

The issue presented in this appeal is whether the Master-in-Equity ("Master") erred in finding the South Carolina Public Service Authority (hereinafter "Santee Cooper") was equitably estopped from condemning a portion of Southern Development Land and Golf Company's (hereinafter "Southern") land for the construction of a high-voltage electric transmission line. The Court of Appeals reversed the Master on this issue. We reverse the Court of Appeals and affirm the Master's finding of equitable estoppel.

## FACTS

In the summer of 1987, Kenneth Tomlinson, president of Southern, was considering purchasing property for the development of a golf and residential community. Tomlinson found the property at issue in this action and determined it was ideal for Southern's plan. The property, however, was encumbered by an electrical-power service line mounted on wooden poles and a higher power distribution line, both running through the property. Tomlinson was concerned that the existence of any exposed power lines would destroy the anticipated high quality of this development.[1] Accordingly, prior to signing a contract purchasing an option on the property, Tomlinson contacted the former Chairman of the Board of Santee Cooper, Robert Davis. Mr. Davis referred him to Joseph Norman, who was then an Executive Vice President of Santee Cooper. On June 11, 1987, the day Tomlinson signed a contract for an option on this property, Tomlinson called Norman. Tomlinson told Norman he was preparing to purchase this property. He informed Norman of Southern's plans for the property and the expense involved, which was in excess of fifty million ($50,000,000) dollars. Tomlinson expressed to Norman his concern with the existence of overhead power lines and Southern's need to avoid all exposed power lines on the property. Norman informed Tomlinson that the smaller power lines would be buried at the expense of Santee Cooper and that the major transmission line could be buried at a cost which would be shared by Southern and Santee Cooper. However, Norman did not tell Tomlinson that Santee Cooper had finalized plans to construct overhead high-voltage, transmission towers and lines in place of the existing lines on the property. There was no public notice of these plans. Santee Cooper's plans necessitated the condemnation of a seventy (70) foot easement over Southern's property to connect to pre-

---

[1] The land in question was found by the Master to be an extremely unique site of a development for a golf course and residential community because of the high bluffs on either side of the waterways and the presence of heavily wooded, rolling terrain. The Master found the golf course has the potential of being one of the finest golf courses on the east coast and being rated as one of the top one hundred courses in the United States by *Golf Digest* and *Golf* magazines.

existing easements. Southern closed on the property and began its development. Southern also purchased additional adjoining land in January of 1988.

Southern first learned of Santee Cooper's plans to condemn the property in February of 1988. Tomlinson sent a letter to Norman at that time recapping their previous conversation but acknowledging the representations made by Norman were not legally binding. Southern proposed several alternative routes which were rejected by Santee Cooper based on criteria which did not include the price of condemning the land involved. Santee Cooper offered to bury the planned transmission lines but at a cost to Southern of over two million dollars ($2,000,000). Southern maintains it would not have purchased the property had it known of Santee Cooper's plan to install this transmission line bisecting the property.

Southern brought this action challenging Santee Cooper's right to condemn. Southern's complaint alleges Santee Cooper's condemnation of a portion of this property constituted an abuse of discretion because Santee Cooper failed to consider, among other factors, the land-acquisition costs when selecting the proposed route. Southern further alleges that Santee Cooper should be equitably estopped from condemning this property based on Santee Cooper's assurances to Southern that all existing lines could be readily buried without informing Southern that a much larger scaled transmission line was planned.

The action was referred to the Master-in-Equity. The Master found for Southern on both grounds and enjoined Santee Cooper from condemning Southern's property for the necessary easement. Santee Cooper appealed the Master's decision to the Court of Appeals. The Court of Appeals reversed the Master's finding on the issue of estoppel and modified the Master's finding on the question of abuse of discretion. *Southern Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.*, 305 S.C. 507, 409 S.E. (2d) 428 (Ct. App. 1991). The Court of Appeals remanded the case back to the Master to allow Santee Cooper to re-evaluate its proposed route and the alternate routes proposed by Southern. The Court of Appeals directed Santee Cooper to consider safety, reliability, aesthetics and costs along with any

other appropriate factors such as environmental conditions and long-range area planning by public authorities.

## Law/Analysis

The essential elements of estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. *Frady v. Smith,* 247 S.C. 353, 147 S.E. (2d) 412 (1966). As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position. *Id.*

The Court of Appeals found that Southern's estoppel argument failed because Southern did not prove Norman had actual knowledge of Santee Cooper's plans to install an additional large-scale transmission line bisecting Southern's property. *Southern Dev. Land & Golf,* at 511, 409 S.E. (2d) at 431. The Court of Appeals held a party may not be estopped by silence without a manifest intent to mislead by his silence. *Id.* We disagree. Estoppel by silence arises where a person owing another a duty to speak refrains from doing so and thereby leads the other to believe in the existence of an erroneous state of facts. *Ridgill v. Clarendon County,* 192 S.C. 321, 6 S.E. (2d) 766 (1939). Silence, when it is intended, or when it has the effect of misleading a party, may operate as equitable estoppel. *Welch v. Edisto Realty Co.,* 170 S.C. 31, 169 S.E. 667 (1933). There is no requirement that the person whose silence misleads another have actual knowledge of the true facts if circumstances are such that knowledge is necessarily imputed to him. *Accord Alwes v. Hartford Life & Accident Ins. Co.,* 372 N.W. (2d) 376 (Minn. Ct. App. 1985). Negligence will take the place of the intent to deceive when there is a duty to disclose. *Id; see also* 3 *Pomeroy's Equity Jurispru-*

*dence* § 809 at 218 (5th ed. 1941). It is undisputed Santee Cooper's plans were established at the time Tomlinson sought assurances regarding the burial of the existing electric lines from Norman. Norman had ready access to this information. We find these facts sufficient to estop Santee Cooper.

One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been misled. *Adams v. Adams*, 220 S.C. 131, 66 S.E. (2d) 809 (1951). The Court of Appeals found that Southern had the means of determining Santee Cooper's plans for future expansion of its system by simply making an appropriate inquiry as the pre-existing easement was a matter of public record. It is not disputed Southern was aware of the pre-existing easement. The easement, however, did not convey Santee Cooper's plans to construct this additional high-voltage transmission line. We find Southern's inquiry to Norman constituted an appropriate inquiry into Santee Cooper's immediate use of this easement.

Finally, reliance by the party seeking to assert estoppel must be reasonable. *Cooper v. Tindall*, 267 S.C. 196, 226 S.E. (2d) 888 (1976). However, the reliance need not rise to a level of a reasonable but erroneous belief the representations are legally binding. Thus, Tomlinson's recognition that Norman's representations were not legally binding is not dispositive on the issue of reliance. Tomlinson was directed to Norman by the former chairman of Santee Cooper. Norman held a high- level position and the assurances given by Norman were within his authority. Accordingly, we find Southern's reliance justified.

Accordingly, we affirm the Master's order enjoining Santee Cooper from proceeding with the condemnation of the easement in question. Although we agree with the Court of Appeals' analysis of the issue of abuse of discretion, in light of our holding on the question of estoppel, we find the remand as ordered by the Court of Appeals unnecessary. Thus, the opinion of the Court of Appeals is AFFIRMED IN PART, and REVERSED IN PART.

HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.