# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Erin Burns Anderson, Respondent,

v.

Rudy Lamar Pearson, Appellant.

Appellate Case No. 2023-001897

---

Appeal From Spartanburg County
Shannon Metz Phillips, Master in Equity

---

Opinion No. 6104
Heard November 7, 2024 – Filed March 5, 2025

---

### REVERSED

---

Duane Alan Lazenby and James Andrew Smith, both of
Lazenby Law Firm, LLC, of Spartanburg; Clifford Bush,
III, of The Law Offices of Clifford Bush III, LLC, of
Beaufort; and Steven Edward Buckingham, of The Law
Office of Steven Edward Buckingham, LLC, of
Greenville, all for Appellant.

William B. Darwin, Jr., of Holcombe Bomar, PA, of
Spartanburg; and Bernie W. Ellis, of Burr & Forman,
LLP, of Greenville, both for Respondent.

---

**THOMAS, J.:**  Rudy Lamar Pearson appeals from the Master in Equity's order
granting specific performance of a real estate contract to Erin Burns Anderson,
arguing the master erred in (1) granting specific performance although the contract
had expired; (2) admitting evidence of pre-contractual discussions in violation of

the parol evidence rule; (3) finding the Statute of Frauds did not void the contract; (4) finding Pearson was equitably estopped from asserting the Statute of Frauds; and (5) finding a meeting of minds between the parties on an alleged oral modification to the contract. We reverse.

**FACTS**

Anderson and Pearson entered a contract for Anderson to purchase a 21.99-acre parcel of land in Spartanburg County from Pearson for $400,000.[1] The contract provided a closing date of September 29, 2017; a "time is of the essence" clause; and "an automatic extension of 5 business days for an unsatisfied contingency through no fault of either party." After the parties did not close on the property, Anderson filed this action seeking specific performance. Pearson answered and the parties filed motions for summary judgment. On November 12, 2019, the matter was referred to the master. After a hearing, the master granted Pearson's motion for summary judgment by order dated March 11, 2020, finding the contract expired.[2] Anderson moved to alter or amend and Pearson opposed her motion. The master granted the motion,[3] finding there was a genuine issue of material fact as to whether Pearson's actions impeded Anderson's ability to complete the purchase in accordance with the contract. Pearson moved to alter or amend, which the master denied.

Anderson testified she contacted Katie Graves, a real estate agent at Century 21, to approach the Pearsons about buying the property. The parties agreed on $400,000 for the purchase price with a closing date of September 29, 2017. Graves texted Anderson on July 9, 2017, stating the Pearsons "were checking with an attorney about the right[-]of[-]way for the 9 acres next [to] the parcel they are selling. The Atty informed them this should be settled before we close. They are going to sell the 9 acres later but if you are interested[,] they would give the option now since you are buying the other lot." Anderson explained she understood the Pearsons needed to retain a portion of the contracted property to prevent the nine-acre parcel from being landlocked.

---

[1] The waterfront property on Lake Cooley abuts Anderson's property. Pearson, with his siblings, also owned a nine-acre tract next to the subject property.
[2] The matter was initially referred to Judge Gordon G. Cooper, who granted Pearson's motion for summary judgment.
[3] Anderson's motion to reconsider was heard and granted by Judge Shannon M. Phillips (hereinafter, the master), who heard the case.

The parties, Mrs. Pearson, the Pearsons' son, and Graves met to sign the contract on July 25, 2017. Mrs. Pearson read each line of the contract aloud to Pearson, and he signed each page.[4] Anderson testified the parties discussed carving out a portion of the property so the Pearsons could have access to the nine acres and the Pearsons agreed to obtain a survey for the right-of-way limited to no more than two acres.[5] According to Anderson, the Pearsons asked for the right-of-way and she "was trying to honor their request and allow them to do that." Anderson claimed Mrs. Pearson said they would get the survey "because they needed to work with the surveyor about exactly what they wanted . . . ."

The contract included a merger clause, stating the "[p]arties agree that this Contract expresses the entire agreement between the parties, that there is no other agreement, oral/otherwise, modifying the terms and this Contract is binding on Parties and principals . . . ." In addition, the contract included a non-reliance clause, stating the "[p]arties execute this Contract freely and voluntarily without reliance upon any statements, representations, inducements, promises, or agreements by Brokers or Parties except as expressly stipulated or set forth in this Contract. If not contained herein, such statements, representations, inducements, promises, or agreements shall be of no force or effect." Finally, the contract indicated "[b]rokers recommend Buyer have Property surveyed . . . ."

The contract indicated Century 21 was involved as "transaction brokerage." The general property description in the Transaction Brokerage Agreement included the statement, "20 Acres or contingent on new survey." However, the Transaction Brokerage Agreement reflects that only Anderson and Graves signed it. In addition, Pearson signed a Compensation Agreement with Century 21, for whom Graves worked.

Anderson paid $3,000 in earnest money and attempted to obtain $300,000 of the purchase price by financing with AgSouth Farm Credit. AgSouth notified Anderson in its commitment letter that it required a survey, a mortgage title insurance policy, and an appraisal of the property.

---

[4] Pearson testified his wife, Mrs. Pearson, communicated with the real estate agent on his behalf regarding the transaction. Anderson testified that Pearson allowed Mrs. Pearson to speak on his behalf about everything.

[5] Pearson objected to the admission of evidence regarding the parties discussing a right-of-way based on the parol evidence rule and the Statute of Frauds. The master overruled the objections.

During the next several weeks, the parties communicated through Graves, usually by text. On August 17, 2017, Anderson asked Graves if she had spoken to the Pearsons about the survey. Graves responded that Mrs. Pearson had just called and said the survey was completed and she was trying to get a brother in the area to pick it up and record it as soon as possible.[6] On August 20, 2017, after Anderson requested a copy of the survey, Graves responded, "[t]hey did not get the survey yet. There is a problem they are trying to resolve." Anderson asked, "what kind of problem?" and Graves responded the Pearsons would be back in Spartanburg "Tuesday," to resolve the survey issue. On August 28, 2017, Mrs. Pearson asked Graves, "when is our deadline?" Graves responded, "9/29/17 plus 5 business days . . . ." The following day, Mrs. Pearson texted, "General description 20 acres are contingent on new survey." Graves responded, "contingent on survey," and Mrs. Pearson replied, "I quoted the contract." On September 12, 2017, Graves reported Mrs. Pearson told her they were coming to Spartanburg over the weekend and would record the survey on "Monday." The next week, on September 20, 2017, Graves notified Anderson that Mrs. Pearson wanted "to have her attorney check it out before it is recorded . . . ." Graves texted Anderson that as soon as the survey was recorded, she would make sure the lender received a copy. On September 27, 2017, Anderson again followed up with Graves. On October 3, 2017, after the contract expired, Graves notified Anderson that the contract needed to be extended. On October 10, 2017, Graves indicated the Pearsons would no longer return her texts or phone calls. On October 23, 2017, Graves received a text from Mrs. Pearson, which stated, "We are building on the property our self. We no longer want to sell."

The survey indicates the field crew conducted the survey on August 10, 2017, it was prepared on August 15, 2017, and it was recorded on October 10, 2017. Anderson admitted she saw the stakes and flags on the property and explained she did not obtain a survey on her own because she did not know how the Pearsons wanted to provide access to the nine acres and she was concerned if she did it, they might not be satisfied. Anderson signed a release of contract, which she gave to Graves; however, Pearson did not sign it.

Graves testified she prepared the contract as Anderson's agent and she considered herself as the buyer's agent. Graves testified she remembered a discussion making the contract contingent on a survey. Graves also testified Mrs. Pearson called her on August 17, 2017 and told her the survey was completed; it would be recorded as soon as possible; and Mrs. Pearson would keep Graves "posted." Graves testified

---

[6] The Pearsons lived in Maryland.

similarly to Anderson regarding communications between Graves and Mrs. Pearson.  When the time to close had passed, Graves notified Mrs. Pearson that she was emailing an extension.  Mrs. Pearson texted, "We are building on the property our self.  We no longer want to sell."  Anderson indicated further interest in the property and Mrs. Pearson responded that the entire property, including the nine-acre parcel, was appraised at $900,000, and if Anderson was not ready to buy, a developer was ready to buy.  Negotiations thereafter deteriorated.[7]

By order filed October 3, 2023, the master found, *inter alia*, Pearson was equitably estopped from raising the Statute of Frauds and Anderson was entitled to specific performance of the contract.  Pearson moved to reconsider, which the master denied.  This appeal followed.

**STANDARD OF REVIEW**

"An action for specific performance is one in equity."  *Campbell v. Carr*, 361 S.C. 258, 262, 603 S.E.2d 625, 627 (Ct. App. 2004).  "In an action in equity, the appellate court may resolve questions of fact in accordance with its own view of the preponderance of the evidence."  *Fesmire v. Digh*, 385 S.C. 296, 303, 683 S.E.2d 803, 807 (Ct. App. 2009).  In addition, the parties here filed cross motions for summary judgment.  "When the parties file cross-motions for summary judgment, the issue becomes a question of law for the [c]ourt to decide de novo."  *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 495, 854 S.E.2d 836, 837 (2021).

**LAW/ANALYSIS**

Pearson argues the master erred in finding him equitably estopped from asserting the Statute of Frauds.  We agree.

The Statute of Frauds states the following:

> No action shall be brought . . . [t]o charge any person
> upon any contract or sale of lands . . . [u]nless the
> agreement upon which such action shall be brought or
> some memorandum or note thereof shall be in writing

---

[7] Anderson concluded her presentation of evidence and Pearson presented no evidence.

and signed by the party to be charged therewith or some person thereunto by him lawfully authorized.

S.C. Code Ann. § 32-3-10(4) (2007). "The enforcement of any agreement regarding the disposition of real property is subject to the [S]tatute of [F]rauds under South Carolina law." *In re Macdonald*, 622 B.R. 837, 847 (Bankr. D.S.C. 2020), *aff'd sub nom. Furlow v. Macdonald*, 2021 WL 2982864 (D.S.C. July 15, 2021). The Statute of Frauds also prevents the oral modification of a contract governed by it. *See Windham v. Honeycutt*, 279 S.C. 109, 110, 302 S.E.2d 856, 856 (1983) (holding evidence of oral modification of the real estate contract was violative of the Statute of Frauds).

However, "the doctrine of estoppel may be invoked to prevent a party from asserting the [S]tatute of [F]rauds." *Collins Music Co. v. Cook*, 281 S.C. 580, 583, 316 S.E.2d 418, 420 (Ct. App. 1984). The elements of equitable estoppel apply to both the party estopped and the party claiming estoppel as follows:

> With regard to the party estopped, the elements of equitable estoppel are: (1) conduct amounting to a false representation or concealment of material facts, "or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;" (2) the intention or expectation that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. *Southern Dev. Land & Golf Co., v. South Carolina Pub. Serv. Auth.*, 311 S.C. 29, 33, 426 S.E.2d 748, 750 (1993). "As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position." *Id.*

*Rushing v. McKinney*, 370 S.C. 280, 293-94, 633 S.E.2d 917, 924 (Ct. App. 2006). "[R]eliance by the party seeking to assert estoppel must be reasonable." *S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.*, 311 S.C. 29, 34, 426 S.E.2d 748, 751 (1993).

We find Anderson failed to meet the elements of estoppel because her reliance was not reasonable. Although there was evidence Pearson represented the survey would be provided to Anderson prior to closing, we find it was not reasonable for Anderson to rely on the representations. Additionally, although Mrs. Pearson created an expectation in Anderson that Pearson would have a survey prepared and sent to her before the closing date, there is also evidence the Pearsons were stalling in providing the survey. Graves indicated this to Anderson, and Anderson's failure to obtain a survey herself was not reasonable. Although Anderson continued to request updates, the updates clearly reflected Pearson was stalling, seeking legal counsel, and requesting confirmation of the date of the contract's expiration.

We also find Anderson failed to show she suffered a detrimental change of position in reliance on the alleged promise to provide a survey. Anderson did not present evidence of any expenditures or other actions she took to her detriment in reliance on Pearson's promise. "In order to overcome statutory requirements that an agreement be in writing, the party asserting estoppel must show that he suffered a definite, substantial, detrimental change of position in reliance on such agreement and that no remedy except enforcement of the bargain is adequate to restore his former position." *Player v. Chandler*, 299 S.C. 101, 106, 382 S.E.2d 891, 894 (1989).

> Pursuant to principles of equitable estoppel, including the doctrine of part performance, courts of equity may declare an oral land contract exempt from strict application of the [S]tatute of [F]rauds, and order specific performance or other equitable relief, upon proof of sufficient actions undertaken by the purchaser in reliance on the oral agreement. Whether particular actions of the purchaser show such reliance on the oral agreement as to warrant equitable relief requires a case-by-case analysis of the facts and circumstances, but the court's determination is most often based on the purchaser's evidence of some combination of several strong indicators of reliance—payment toward the purchase price, taking of possession of the property, and making of substantial improvements thereto.

63 Am. Jur. 3d *Proof of Facts* § 105 (2001). Our appellate courts require proof of change in position when considering whether equitable estoppel applies. *See Springob v. Univ. of S.C.*, 407 S.C. 490, 498, 757 S.E.2d 384, 388 (2014) (finding

"there [wa]s proof of an oral contract between the parties" that was "sufficient to create an issue of material fact as to whether [the plaintiffs] suffered a definite, substantial, and detrimental change in reliance on [the] purported oral representations" in considering the plaintiffs' equitable estoppel claim); *Smith v. Williams*, 141 S.C. 265, 288, 139 S.E. 625, 632 (1927) (finding equitable estoppel where a son stood silently by for fourteen years after the age of majority while his mother made extensive improvements to the family property before the son attempted to obtain the property based on the Statute of Frauds); *Atl. Wholesale Co. v. Solondz*, 283 S.C. 36, 41, 320 S.E.2d 720, 724 (Ct. App. 1984) (finding equitable estoppel where the defense of the Statute of Frauds was asserted because Atlantic Wholesale suffered a detrimental change in position by purchasing silver for a considerable sum that subsequently dropped significantly in value based on an oral agreement); *Collins Music Co., Inc. v. Cook*, 281 S.C. 580, 583, 316 S.E.2d 418, 420 (Ct. App. 1984) (finding the plaintiff was not entitled to equitable estoppel to overcome the statutory requirement of a writing where the plaintiff did not suffer a substantial, detrimental change in position in reliance on the contract but merely lost an expected benefit of the contract). *But see Rodarte v. Univ. of S.C.*, 419 S.C. 592, 602-03, 799 S.E.2d 912, 917 (2017) (finding no equitable estoppel because the facts of the case were easily distinguishable from those of *Springob* where the plaintiffs were attempting to alter the terms of unambiguous, written contracts). After finding Anderson's reliance was not reasonable and she failed to show a substantial, detrimental change in position, we reverse the master's finding of equitable estoppel and order of specific performance.

Pearson also argues the master erred in granting specific performance where the contract included a "time is of the essence" clause, a merger clause, and a non-reliance clause. We agree.

Pearson argues he did not sign anything indicating that he would obtain a right-of-way survey or assume any financial contingency assigned to Anderson. He relies on the merger clause, the non-reliance clause, and the recommendation in the contract that Anderson obtain a survey. Pearson maintains any modification to the contract requiring him to obtain and pay for a survey of the overall land being sold to enable Anderson to obtain the loan must have been in writing and signed by him. Pearson also relies on the "time is of the essence" clause, arguing the contract expired and Anderson is not entitled to specific performance.

"[W]hen a merger clause exists that expresses the parties' intention to treat the agreement as completely integrated, the terms of the agreement cannot be altered by parol evidence." *Gee v. Delta Speir Plantation LLC*, 390 F. Supp. 3d 645, 650

(D.S.C. 2019), *aff'd*, 2022 WL 575589 (4th Cir. Feb. 25, 2022); *see* Morgan H. Rogers, *Slack v. James: Can South Carolina's Real Estate Industry Rely on Non-Reliance Clauses?*, 57 S.C. L. Rev. 583, 583-84 (2006) (stating that in contract cases, "[t]he parol evidence rule provides that merger clauses will prevent the contracting parties from presenting any evidence outside the four corners of the contract to establish a breach of contract claim"). "A general non-reliance clause, just as a merger clause, does not prevent one from proceeding on *tort theories of negligent misrepresentation and fraud*." *Slack v. James*, 364 S.C. 609, 618, 614 S.E.2d 636, 641 (2005) (emphasis added). "[M]ost courts hold that the parol evidence rule only bars a complaining party from introducing evidence of pre-contractual representations in contract actions, not tort actions." Glenn D. West & W. Benton Lewis, Jr., *Contracting to Avoid Extra-Contractual Liability--Can Your Contractual Deal Ever Really Be the "Entire" Deal?*, 64 Bus. Law. 999, 1026 (Aug. 2009). "Where 'time is made the essence of the contract,' the parties are bound by the time limited in the contract, and the vendee forfeits his rights by a failure to comply within the specified time." *Williams v. McManus*, 90 S.C. 490, 495, 73 S.E. 1038, 1048 (1912) (citation omitted).

A party seeking specific performance must prove "(1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) *the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract*." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 106, 531 S.E.2d 287, 291 (2000) (emphasis added). Pearson argues the master should have relied on *Ingram*. In *Ingram*, our supreme court found a tenant was not entitled to specific performance of an option to purchase property from a landlord in part because the tenant "was not in a position to pay" the purchase price on either "the date the lease expired, or on March 14, 1994, the date he brought the action for specific performance." *Id.*

Here, like in *Ingram*, we find Anderson did not present evidence that she had the ability to perform her part of the contract at the time of closing or within the five-day grace period. For instance, Anderson did not present evidence that at the time of closing, she had obtained other items necessary to close, such as an appraisal or mortgage title insurance. In addition, regardless of her ability to pay at the time of the hearing, she did not come forward at the time of closing with the $100,000, which was the unfinanced portion of the purchase price. The contract required Anderson to be ready to pay $400,000 at closing, which she failed to provide evidence she was able to do.

Furthermore, the contract, which included merger and non-reliance clauses, did not require Pearson to provide the survey.  The contingency regarding a survey was not included in the parties' contract, and its inclusion in the Transaction Brokerage Agreement did not bind Pearson, who was not a party to it.  We find the master erred in failing to apply the parol evidence rule and in finding Anderson was timely able to perform her part of the contract.  Accordingly, we also reverse the order granting specific performance on this ground.

We decline to address Pearson's remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an appellant's remaining issues where the disposition of a prior issue was dispositive).

**CONCLUSION**

The order on appeal is

**REVERSED.**

**HEWITT and VINSON, JJ., concur.**